## MATTER OF HERNANDEZ-PUENTE

In Rescission Proceedings Under Section 246
- of the Immigration and Nationality Act

A-22918876

*Decided by Board June 20, 1991*

(1) The Board of Immigration Appeals and the immigration judges are without authority to apply the doctrine of equitable estoppel against the Immigration and Naturalization Service so as to preclude it from undertaking a lawful course of action that it is empowered to pursue by statute and regulation.

(2) The Service has no authority to grant an application for adjustment of status nunc pro tunc under section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255 (1988).

(3) As the Board has no jurisdiction, according to 8 C.F.R. § 245.2(a)(5) (1991), to review a district director's decision to deny adjustment of status, it follows that the Board also lacks jurisdiction to review or remedy a failure of the Service to act on the application.

ON BEHALF OF RESPONDENT:
Pete Magaro, Esquire
Anderson Executive Building
1017 North Main Avenue, Suite 101
San Antonio, Texas 78212

ON BEHALF OF SERVICE:
Claire W. Matecko
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated February 12, 1988, an immigration judge rescinded the respondent's prior grant of adjustment of status to that of a lawful permanent resident. The respondent has appealed from that decision. The appeal will be dismissed.

The facts in this case are elicited from trial briefs submitted by the Immigration and Naturalization Service and the respondent in the record before the immigration judge in lieu of an evidentiary hearing. The immigration judge permitted this on the basis that the facts were not in dispute and the case only involved issues of law.

The respondent, a 30-year-old native and citizen of Mexico, entered the United States as a nonimmigrant visitor in September 1977 with his mother, on the basis of his mother's Nonresident Alien Mexican Border Crossing Card (Form I-186). On November 14, 1977, he acquired derivative fifth-preference classification as the unmarried child of a sister of a United States citizen after a visa petition was filed on his mother's behalf. *See* sections 203(a)(5), (8) of the Immigration

and Nationality Act, 8 U.S.C. §§ 1153(a)(5), (8) (1976); 8 C.F.R. § 204.1(a) (1977). The visa petition was approved on December 6, 1977, and the respondent, his two brothers, and his mother filed applications for adjustment of status pursuant to section 245 of the Act, 8 U.S.C. § 1255 (1976), on April 24, 1978. They all appeared for personal interviews and were informed that their adjustment applications were approved and that each would receive an Alien Registration Receipt Card (Form I-551) in the mail. Subsequently, the respondent's mother and his two brothers received their cards, but the respondent did not. Reportedly, inquiries were made with the Service, and each time the respondent was assured that everything was in order and that his application had been granted. However, in fact, no action had been taken on the respondent's application.

The respondent was married on January 11, 1980, and on April 29, 1982, he was paroled into the United States by the Service. However, upon reviewing his prior adjustment application, the Service terminated his parole status on August 19, 1982, concluding that he was no longer eligible for derivative preference classification through his mother, since he was over the age of 21 and married, and, thus, was no longer a "child." See sections 101(b)(1), 203(a)(8) of the Act, 8 U.S.C. §§ 1101(b)(1), 1153(a)(8) (1982); 8 C.F.R. § 204.1(a) (1982). The Service then informed the respondent in a letter dated June 21, 1985, that his application for adjustment of status was denied and gave him until July 21, 1985, to voluntarily depart from the United States. However, on September 9, 1985, the Service granted his application for adjustment of status nunc pro tunc, effective as of August 15, 1978. Apparently, the respondent subsequently lost the Alien Registration Receipt Card issued to him in conjunction with the grant of his application. When he applied for a replacement, these rescission proceedings were instituted when the district director, on March 6, 1987, issued a notice of intent to rescind the respondent's prior adjustment of status on the basis that there existed no authority to approve the application for adjustment of status nunc pro tunc. On March 18, 1987, the respondent requested a hearing before an immigration judge.

In his decision to rescind the adjustment of the respondent's status, the immigration judge concluded that there existed no authority to grant adjustment of status on a nunc pro tunc basis, and that the Service was not estopped from seeking rescission. Accordingly, the immigration judge ruled that rescission was warranted, given that at the time of the respondent's adjustment of status on September 9, 1985, he was ineligible for derivative status in view of his age and marriage.

Section 246(a) of the Act, 8 U.S.C. § 1256(a) (1988), provides in pertinent part:

If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 245 or 249 of this Act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made.

In rescission proceedings, the Government bears the burden of proving ineligibility for adjustment of status by clear, unequivocal, and convincing evidence. *Waziri v. INS*, 392 F.2d 55 (9th Cir. 1968); *Matter of Pereira*, 19 I&N Dec. 169 (BIA 1984).

On appeal, the respondent contends through counsel that in the absence of any statute or regulation prohibiting such action, the Service has the inherent power to grant adjustment of status nunc pro tunc. He further asserts that the action of the Service in separating his administrative file from those of his other family members amounts to affirmative misconduct, as a result of which it should be estopped from seeking to rescind the prior grant of adjustment of status.

The Service contends on appeal that it has no authority to grant applications for adjustment of status on a nunc pro tunc basis. In the Service's view, its actions in this case do not rise to the level of affirmative misconduct so as to establish a case for equitable estoppel.

Turning first to the Service's grant of adjustment of status on September 9, 1985, we agree that the Service had no authority to grant that relief on a retroactive or nunc pro tunc basis. Since a nonimmigrant alien is assimilated to the position of an applicant for entry when applying for adjustment of status, he must be eligible, at the time his application is acted on, for the preference category relied on when the application was filed. *Pei-Chi Tien v. INS*, 638 F.2d 1324 (5th Cir. 1981); *Yui Sing Tse v. INS*, 596 F.2d 831 (9th Cir. 1979); *see also* section 204(e) of the Act, 8 U.S.C. § 1154(e) (1988). Although discretion is given to the Attorney General to admit applicants, he has no authority to act retroactively on an application. *Dong Sik Kwon v. INS*, 646 F.2d 909 (5th Cir. 1981); *Matter of Talanoa*, 13 I&N Dec. 161 (BIA 1969), *aff'd*, 427 F.2d 1143 (9th Cir. 1970).

Given that the Service had no authority to grant the application for adjustment of status nunc pro tunc, we find that the grant was in error. The respondent was seeking immigrant status under section 203(a)(8) of the Act, which allows a "child," as defined by sections 101(b)(1)(A)-(E), if not otherwise entitled to an immigrant status and the immediate issuance of a visa, to be entitled to the same status as that afforded to his parent if accompanying or following to join that parent. *See also* 8 C.F.R. § 204.1(a)(5) (1991). Section 101(b)(1) defines a "child" to mean an unmarried person under 21 years of age. As noted above, at

the time his application for derivative status was granted on September 9, 1985, the respondent was both married and over the age of 21. Therefore, the Service has demonstrated by clear, unequivocal, and convincing evidence that the respondent was ineligible for adjustment of status at the time it was granted.

The respondent seeks to estop the Service from rescinding his prior adjustment of status on the basis of its conduct in this case. In two nationality cases, *INS v. Hibi*, 414 U.S. 5 (1973), and *Montana v. Kennedy*, 366 U.S. 308 (1961), the United States Supreme Court opened the possibility that the doctrine of equitable estoppel might be applied against the Government in a case where it is established that its agents engaged in "affirmative misconduct." *See also INS v. Pangilinan*, 486 U.S. 875 (1988) (neither by application of estoppel doctrine, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship to Filipino nationals). However, the Supreme Court has not yet decided whether even "affirmative misconduct" is sufficient to estop the Government from enforcing the immigration laws. *INS v. Miranda*, 459 U.S. 14 (1982); *see also Matter of Tuakoi*, 19 I&N Dec. 341 (BIA 1985); *Matter of M/V "Solemn Judge*," 18 I&N Dec. 186 (BIA 1982). Some federal courts have found "affirmative misconduct" and applied estoppel against the Government. *See, e.g., Corniel-Rodriguez v. INS*, 532 F.2d 301 (2d Cir. 1976). By implication, the United States Court of Appeals for the Fifth Circuit, within whose jurisdiction this case falls, has found that the doctrine of equitable estoppel may be applied against the Service where affirmative misconduct is demonstrated. *Fano v. O'Neill*, 806 F.2d 1262 (5th Cir. 1987). Acting on an appeal from a lower court's grant of summary judgment for the Service, the court found that the alien's claims against the Service were broad enough to encompass the type of conduct sufficient for estoppel. In the court's view, there existed a material issue of fact precluding summary judgment, and it accordingly reversed and remanded. In that case, summary judgment would still have been proper notwithstanding the factual issue, if, as a matter of law, equitable estoppel was not available against the Service. As the court nevertheless found it necessary to reverse and remand the case, it would appear that the court has accepted the principle that estoppel is available upon a showing of affirmative misconduct.

However, although the Fifth Circuit may have accepted the availability of estoppel against the Service, the Board itself and the immigration judges are without authority to apply the doctrine of equitable estoppel against the Service so as to preclude it from undertaking a lawful course of action that it is empowered to pursue by statute and regulation. Equitable estoppel is a judicially devised doctrine which precludes a party to a lawsuit, because of some

improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity. *M.D. Phelps v. Fed. Emergency Management Agency*, 785 F.2d 13 (1st Cir. 1986). Estoppel is an equitable form of action and only equitable rights are recognized. *Keado v. United States*, 853 F.2d 1209 (5th Cir. 1988). By contrast, this Board, in considering and determining cases before it, can only exercise such discretion and authority conferred upon the Attorney General by law. 8 C.F.R. § 3.1(d)(1) (1991). Our jurisdiction is defined by the regulations and we have no jurisdiction unless it is affirmatively granted by the regulations. *Matter of Sano*, 19 I&N Dec. 299 (BIA 1985); *Matter of Zaidan*, 19 I&N Dec. 297 (BIA 1985).

Of course, this Board is empowered to find that a violation of the statutes or regulations has infringed upon an alien's procedural rights, which may in turn affect determinations regarding deportability, exclusion, relief from deportation or exclusion, or other benefits under the immigration laws. However, this authority exists only to the extent that it is encompassed by our appellate jurisdiction, as delineated by 8 C.F.R. § 3.1(b) (1991). As we have no jurisdiction to review a district director's decision to deny adjustment of status according to 8 C.F.R. § 245.2(a)(5) (1991), it follows that we have no jurisdiction to review or remedy a failure to act on the application. As in this case, we do review the decision of the immigration judge in rescission proceedings, but the matter before us over which we have jurisdiction is whether the Service has met its burden of proving that the alien was ineligible at the time adjustment of status was granted, and not whether the failure to previously grant adjustment of status and the circumstances surrounding that failure constitute affirmative misconduct so as to justify granting adjustment of status as an equitable remedy in the face of the alien's clear ineligibility.

It is well settled that it is not within the province of this Board to pass on the validity of the statutes and regulations we administer. *Matter of Patel*, 19 I&N Dec. 774 (BIA 1988); *Matter of Valdovinos*, 18 I&N Dec. 343 (BIA 1982); *Matter of Bogart*, 15 I&N Dec. 552 (BIA 1975, 1976; A.G. 1976); *Matter of Chavarri-Alva*, 14 I&N Dec. 298 (BIA 1973). It follows that if the Service, pursuant to those statutes and regulations, properly seeks to rescind a prior grant of adjustment of status and establishes by clear, unequivocal, and convincing evidence that the alien was ineligible when adjustment of status was granted, the rescission must be upheld by the Board.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.