# In re UNITED AIRLINES FLIGHT UA802

## File A99 950 062 - Falls Church

*Decided as Amended June 4, 1999*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A carrier is subject to fine under section 273(a) of the Immigration and Nationality Act, 8 U.S.C. § 1323(a) (1994), when an alien passenger it has transported to the United States is paroled into the country but is not granted a waiver of documents under 8 C.F.R. § 212.1(g) (1995).

Jonathan A. Fuchs, Esquire, Brooklyn, New York, for the carrier

Karl D. Klauck, Acting Appellate Counsel, for the Immigration and Naturalization Service

Before:  Board Panel: HOLMES, HURWITZ, and VILLAGELIU, Board Members.

HOLMES, Board Member:

In a decision dated November 16, 1995, the director of the Immigration and Naturalization Service National Fines Office ("director") imposed an administrative fine totaling $3000 for one violation of section 273(a) of the Immigration and Nationality Act, 8 U.S.C. § 1323(a) (1994), and found no evidence sufficient to warrant remission of the fine. The carrier has appealed from this decision and has requested oral argument. The request for oral argument is denied and the appeal will be dismissed.

### I. BACKGROUND

The record reflects that the carrier brought a passenger to the United States on November 22, 1994, on a flight from Japan. The passenger, a native and citizen of the Mongolian People's Republic, did not have a valid unexpired visa in his possession when he arrived in the United States. He

---

[1] On our own motion, we amend the May 28, 1999, order in this case to correct current footnote 5.

presented a Mongolian Diplomatic Passport with a visitor visa for one entry into Canada. He applied for admission into the United States as a passenger in transit without a visa, as he was scheduled to connect to another airline's flight to Montreal. The alien was determined by Service officers to be ineligible for transit without visa status and was found excludable for lack of a visa.[2] He was, however, paroled by the Service into the United States for departure to Canada.

On December 19, 1994, the director issued a Notice of Intention to Fine under Immigration and Nationality Act (Form I-79), in which the director found that the carrier violated section 273 of the Act by bringing the alien passenger to the United States without a visa. The director therefore determined that the carrier was liable for an administrative fine in the amount of $3000.

In a response dated December 27, 1994, the carrier asserted that the alien passenger was eligible for waiver of the visa requirement under section 212(d)(4) of the Act, 8 U.S.C. § 1182(d)(4) (1994), and 8 C.F.R. § 212.l(g) (1995), and that had such a waiver been issued, the carrier would not be subject to fine. The carrier further asserted that, in order to preserve fine liability, the Service instituted a policy whereby it paroled aliens, rather than granting them visa waivers. The carrier alleged that under such procedure, the Service chose to forego the $90 Form I-193 fee for a section 212(d)(4) waiver from the alien and to fine the carrier $3000 instead. The carrier further asserted that "by directing the Ports of Entry not to admit but to parole these nonimmigrant aliens, the National Fines Office has de facto divested the district directors of their lawful discretion" to grant section 212(d)(4) waivers.

In a decision dated November 16, 1995, the director found the carrier liable for a fine under section 273 of the Act because the passenger was not eligible for transit without visa status under 8 C.F.R. § 212.1(f)(2) and did not possess the required visa. He found that "counsel's argument that immigration officials at the Ports of Entry were instructed to cease admitting immigrant passenger(s) to the United States by waiver is not supported by the facts." The director further determined that the carrier had failed to produce sufficient evidence to warrant remission of the fine.

---

[2]The regulation in effect in 1994 provided:

*Waiver of passport and visa*. On the basis of reciprocity, the waiver of passport and visa is available to a national of . . . Mongolian People's Republic . . . only if he/she is transiting the United States by aircraft of a transportation line signatory to an agreement with the Service on Form I-426 on a direct through flight which will depart directly to a foreign place from the port of arrival.

8 C.F.R. § 212.1(f)(2) (1994). Because the alien passenger was scheduled to disembark the carrier's flight and to connect with and depart on a flight of another carrier, he was ineligible for transit without visa status and was required to present a visa.

## II. RELEVANT STATUTORY AND REGULATORY PROVISIONS

Section 273(a) of the Act provides that it shall be unlawful for any person "to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have a valid passport and an unexpired visa, if a visa was required under this Act or regulations issued thereunder." Under section 273(a) of the Act the carrier who brings aliens to the United States becomes, in effect, an insurer that the aliens have met the visa requirements of the Act. *Matter of Scandinavian Airlines Flight #SK 911,* 20 I&N Dec. 306 (BIA 1991). Any bringing to the United States of an alien who does not meet those requirements results in fine liability for the carrier. *Matter of "M/V Emma*," 18 I&N Dec. 40 (BIA 1981).

Section 212(d)(4) of the Act provides that the Attorney General may waive the requirements stated under section 212(a)(7)(B)(i) of the Act for a valid passport or visa for a nonimmigrant on the basis of unforeseen emergency in individual cases. The implementing regulation in effect in December 1994 provided, in relevant part:

> *Documentary requirements for nonimmigrants.*
>
> A valid unexpired visa and an unexpired passport . . . shall be presented by each arriving nonimmigrant alien except . . . for the following classes:
>
> (g) *Unforeseen emergency*. A visa and a passport are not required of a nonimmigrant who, either prior to his or her embarkation at a foreign port or place or at the time of arrival at a port of entry in the United States, satisfies the district director at the port of entry that, because of an unforeseen emergency, he or she is unable to present the required documents, in which case a waiver application shall be made on Form I-193. The district director may approve a waiver of documents in each case in which he or she is satisfied that the nonimmigrant cannot present the required documents because of an unforeseen emergency and the waiver would be appropriate in the circumstances.[3]

---

[3]This regulation was amended, effective March 22, 1996, to state:

> A valid unexpired visa and an unexpired passport . . . shall be presented by each arriving nonimmigrant alien except . . . for the following classes:
>
> (g) Unforeseen emergency. A nonimmigrant seeking admission to the United States must present an unexpired visa and a passport . . . . Upon a nonimmigrant's application on Form I-193, a district director at a port of entry may, in the exercise of his or her discretion, on a case-by-case basis, waive the documentary requirements, if satisfied that the nonimmigrant cannot present the required documents because of an unforeseen emergency.

8 C.F.R. § 212.1(g) (1997); *see also* 61 Fed. Reg. 11,720 (1996).

In its brief, the carrier asserts that this amendment was improper because under section 212(d)(4) of the Act, the concurrence of the Secretary of State was required but purportedly not obtained. As resolution of this issue is not necessary for our decision in this case, we need not consider this contention.

8 C.F.R. § 212.1(g) (1995); *see also* 59 Fed. Reg. 1467 (1994).

The Board considered the effect on fine liability of a grant of a waiver under 8 C.F.R. § 212.1(g) in *Matter of "Flight SR-4",* 10 I&N Dec. 197 (BIA 1963). The Board held that liability to fine was not incurred under section 273 of the Act for bringing to the United States a nonimmigrant alien without a valid visa when such alien was paroled into the United States *and was subsequently granted a waiver of the nonimmigrant visa* pursuant to section 212(d)(4)(A) of the Act and the regulations thereunder.

### III. ISSUES PRESENTED

On appeal, the carrier's "entire claim is that its conduct (the bringing of an alien who is otherwise admissible and lacks documents due to an unforseen emergency—thereby qualifying for a waiver) is lawful and there has been no violation of [section 273(a) of the Act]." The carrier argues that the Service improperly paroled the alien in this case and that the alien should have instead been granted a visa waiver under 8 C.F.R. § 212.1(g).[4] The carrier asserts that the Service's sole motive in paroling the alien rather than issuing a visa waiver was to preserve fine liability on the carrier's part. In support of this contention, the carrier has cited Service memos and written comments of Service inspectors in cases of other aliens. These comments reflect, according to the carrier, the Service's intent to "maximize revenues." The carrier notes that this practice became widespread in 1994 when the Service, which had fined carriers in cases where the nonimmigrant had been granted a section 212(d)(4)(A) waiver, realized that such conduct was improper under the regulation and accordingly, in 1994, canceled all fines levied on carriers in such cases. The carrier notes in this regard that statistics reflect that "before the Service ceased imposing penalties in 1994 for nonimmigrants granted waivers, the ratio of nonimmigrants brought without a passport or visa and paroled to those granted a waiver and admitted was 1:9. Ninety percent of these nonimmigrants were granted a waiver and only 10 percent were paroled. After August 1994, this ratio magically reversed . . . ."

The carrier, in support of its position, further states that "the Service's motivation for (granting nonimmigrant visitors without visas or passports parole rather than a section 212(d)(4)(A) waiver) is conveniently explained in its unilateral amendment to 8 C.F.R. § 212.1(g) on March 22, 1996. The

---

[4]The carrier asserts that a waiver would have been granted in the present case, as "prior to August 1994, and after March 1996, (the Service) routinely finds an unforeseen emergency deserving of a waiver in situations where the alien simply (i) did not know he needed a visa, or (ii) left the passport at home and states that he is *not* traveling on an emergency."

carrier notes that the summary accompanying the amendment states that the amendment is necessary to (i) remove a 38-year-old unintended benefit of exonerating carriers when a waiver is granted to nonimmigrants and (ii) conform with the intent of Congress to impose penalties when a waiver is granted." The carrier argues that such motivation is improper and that the Service practice of granting parole in cases such as the present one is not in accord with congressional intent.

The carrier also challenges the parole policy of the Service by noting that the statute grants the Service authority to parole "in the public interest" under section 212(d)(5) of the Act, but maintains that because "nonimmigrants are permitted to enter the United States whether they are paroled or admitted by waiver, there is no public interest served by paroling nonimmigrants rather than granting them waivers."

On appeal, the carrier also maintains that the Service should be estopped from levying a fine in its case by the principle of laches. In this regard, it notes that it timely appealed the director's November 16, 1995, decision on November 22, 1995, yet "for almost 4 years thereafter . . . the director intentionally withheld the instant appeal. . . from impartial review by the Board." The carrier asserts that this conduct directly contradicts the mandate of 8 C.F.R. § 3.5 (1994), which at the time of the appeal provided that the record of proceeding "shall be immediately forwarded to the Board" upon the expiration of the briefing time.[5] The carrier asserts that it has been harmed by such action, as it is faced with the prospect of refusing passage to aliens in situations such as the present case or risk fine liability. Additionally, the carrier asserts that it is harmed because it is forced to appeal multiple cases until the issue is decided and also because the Service has sought to assess interest and handling charges accruing during the pendency of the appeal.

For its part, the Service maintains that it possesses the discretion and authority to parole aliens, and that fine liability exists under the 1994 version of 8 C.F.R. § 212.1(g) applicable in the present case, because an alien, although paroled, was not granted a visa waiver. The Service concedes that fine liability would not exist if the alien had been granted a

---

[5]The regulation in effect at the time of the carrier's appeal stated that the record of proceedings "shall be forwarded to the Board . . . upon timely receipt of the briefs of the parties, or upon expiration of the time allowed for the submission of such briefs." The regulation presently provides that the record should be "promptly" forwarded after briefs are received or the filing time has expired. 8 C.F.R. § 3.5(b) (1999). Both the current and past versions of the regulation state that the record "shall be immediately forwarded to the Board" in circumstances where the district director contemplates reopening and reconsidering a decision, but a new decision is not issued within 45 days or the appealing party does not agree that the decision disposes of the matter.

waiver under 8 C.F.R. § 212.1(g), but maintains that there is no evidence in the present case that the alien was entitled to, or granted, a waiver.

## IV. DISCUSSION

It is clear that if a waiver under section 212(d)(4)(A) of the Act had been granted to the nonimmigrant alien passenger, the carrier would not be subject to fine liability in this case. *See Matter of "Flight SR-4", supra*. It is equally clear that where a nonimmigrant alien not in possession of a valid passport or visa is paroled into the United States but is *not* granted a waiver under section 212(d)(4)(A) of the Act, the carrier is liable for a fine under section 273(a) of the Act. *Matter of Aircraft "VT-DJK",* 12 I&N Dec. 267 (BIA 1967); *Matter of Plane "F-BHSQ"*, 9 I&N Dec. 595 (BIA 1962). In *Matter of Aircraft "VT-DJK"*, where a nonimmigrant alien passenger without a valid visa was paroled into the United States, but no section 212(d)(4)(A) waiver was obtained, the carrier was held liable for a fine. On the issue of parole, the Board stated:

> The carrier's situation in this respect is not altered by the fact that the alien passenger was paroled into this country to accomplish the purpose of his trip. That is because the passenger's parole did not constitute his "admission" into the United States. In the eyes of the law, after the parole he stood at the threshold of this country seeking admission (*Leng May Ma v. Barber*, 357 U.S. 185). Thus, the action of the Service in paroling the alien passenger had no bearing whatsoever upon the question of the carrier's liability to the fine for bringing him to this country from foreign without proper documents, or upon the question of remission thereof.

*Matter of Aircraft "VT-DJK", supra*, at 269.

On the basis of this authority, we find that the carrier in the present case is subject to fine liability under section 273(a) of the Act for bringing the nonimmigrant passenger into the United States without a valid visa. The passenger was paroled, but no waiver under section 212(d)(4)(A) of the Act was granted to him.

On appeal, the carrier presents a number of arguments to challenge the propriety and fairness of the Service procedure in this case in granting parole to the alien passenger, ostensibly in lieu of a section 212(d)(4)(A) waiver. It is well established, however, that the district director has exclusive jurisdiction to parole an alien into the United States pursuant to 8 C.F.R. § 212.5(a) (1999). *Matter of Matelot*, 18 I&N Dec. 334 (BIA 1982). The Board does not have authority to review the manner in which the district director exercises that power. *Matter of Castellon*, 17 I&N Dec. 616 (BIA 1981); *Matter of Niayesh*, 17 I&N Dec. 231 (BIA 1980). We cannot therefore consider the challenge to the appropriateness of the Service's decision to parole the carrier's alien passenger into the United States.

We further note that under the controlling statute and regulations, a waiver under section 212(d)(4)(A) of the Act is available to a nonimmigrant alien not in possession of a valid passport or visa who demonstrates an unforeseen emergency and who applies for such waiver. Under this procedure, even if it ordinarily would be the Service who advises an arriving alien of the possibility of a waiver, it is the alien passenger who requests the waiver and is the primary beneficiary if such waiver is granted. Obviously, the carrier would benefit if such waiver is granted because fine liability would not exist. But we cannot say that the carrier in any case has a settled expectation that the alien passenger would request a waiver or that a waiver would be granted, particularly if the passenger has the option of requesting parole. Indeed, it may well be that the alien passenger prefers parole rather than having to apply for a waiver, which requires payment of a fee. Under either scenario, the passenger would likely be permitted to accomplish the purpose of his travel. In any event, it is the alien passenger, not the carrier, who is responsible for seeking a waiver, and the carrier cannot therefore foretell at the time of boarding whether a waiver would be requested or granted.[6] In the present case, there is no evidence that the alien passenger requested or was granted a waiver.

In its defense, the carrier also asserts that the Service should be estopped by laches from enforcing fine liability. This is so because the Service long delayed forwarding the appeal to the Board. However, the Board has held that it is without authority to apply the doctrine of equitable estoppel against the Service. *Matter of Hernandez-Puente*, 20 I&N Dec. 335 (BIA 1991). In that case, it was stated that "[e]stoppel is an equitable form of action" and that the Board is "without authority to apply the doctrine of equitable estoppel against the Service so as to preclude it from undertaking a lawful course of action that it is empowered to pursue by statute and regulation." *Id.* at 338, 339. By contrast, this Board, in considering and determining cases before it, can only exercise such discretion and authority conferred upon the Attorney General by law. *Matter of Hernandez-Puente, supra*. Our jurisdiction is defined by the regulations, and we have no jurisdiction unless it is affirmatively granted by the regulations. *Id.* Accordingly, we find that we are without jurisdiction to terminate the fine proceedings in this case on equitable grounds.

As we find that the director lawfully imposed a $3,000 fine on the carrier, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[6]The carrier submits that it was improper for the Service to withhold a waiver without the approval of the Secretary of State. Aside from the matters discussed above, we note that the record before us does not reflect that the passenger requested a waiver.