# United States Court of Appeals
## For the First Circuit

No. 03-1059

ROSITA MAHABIR, ET AL.,

Petitioner,

v.

JOHN ASHCROFT, Attorney General,

Respondent.

PETITION FOR REVIEW OF THE FINAL ORDER OF REMOVAL
BY THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lynch, and Lipez, Circuit Judges.

Jose A. Espinosa on brief for petitioner.
Paul Fiorino, Attorney, Office of Immigration Litigation, Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, and Richard M. Evans, Assistant Director, on brief for respondent.

October 22, 2004

**LYNCH**, **Circuit Judge**. Petitioner Rosita Mahabir, a citizen of Trinidad and Tobago, entered the United States on June 13, 1989 on a visitor's visa. She later obtained an employment visa through a sponsoring employer, Anna Zarren, for whom Mahabir worked as a home attendant from January 1990 to November 1997. Through Zarren, in late 1995 Mahabir applied for adjustment of status to that of lawful permanent resident. Mahabir was then eligible to apply because she was currently employed pursuant to an employment visa. See 8 U.S.C. § 1255(a). Because of a mixup at the Immigration and Naturalization Service (INS) with her paperwork, her application was not acted upon for years, and in the intervening time her sponsoring employer died.

Upon learning of Zarren's death, the INS on October 28, 1999, denied Mahabir's application for adjustment of status and issued her a notice to appear on November 3, 1999, charging her with being removable from the United States. The INS reasoned that the death of her sponsoring employer automatically invalidated her employment visa, and so she was no longer eligible for adjustment of status. See 8 C.F.R. § 1205.1(a)(3)(iii)(B); see also 8 U.S.C. § 1255(a).

At her removal hearing before the Immigration Judge (IJ), Mahabir's counsel moved to terminate the removal proceedings and asked the IJ to adjudicate her claim for adjustment of status nunc pro tunc. "Nunc pro tunc," which means "now for then," applies to

actions taken by a court through its inherent legal power after the time in which the actions should have been taken, with retroactive effect. See Black's Law Dictionary 1100 (8th ed. 2004).

On November 28, 2000, the IJ found that, although the delay in adjudicating Mahabir's adjustment of status was the fault of the INS, the death of her sponsoring employer prior to the adjudication of her petition automatically revoked her employment visa under 8 C.F.R. § 1205.1(a)(3)(iii)(B). That regulation provides:

> (a) Reasons for automatic revocation. The approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of 8 CFR chapter I is revoked as of the date of approval:
> . . .
> (3) If any of the following circumstances occur . . . before the decision on [petitioner's] adjustment application becomes final:
> . . .
> (iii) Petitions under section 203(b), other than special immigrant juvenile petitions.
> . . .
> (B) Upon the death of the petitioner or beneficiary.

Id. This, the IJ reasoned, left the IJ without power to grant the requested relief. She thus pretermitted the petitioner's application for adjustment of status and granted her voluntary departure from the United States.

Mahabir appealed to the Board of Immigration Appeals (BIA), arguing that the BIA should show compassion and exercise "independent judgment and discretion." Id. § 1003.1(d)(1)(ii).

-3-

She referred to the BIA's "inherent authority" to do equity. The BIA affirmed the decision of the IJ in whole on December 13, 2002 in a simple order, adding only: "Neither this Board nor the Immigration Judges have the authority to grant relief nunc pro tunc."

Mahabir filed a motion requesting that the BIA reconsider its decision. For the first time she raised the argument that she was entitled to equitable tolling from the effects of the INS's unreasonable delay in processing her application for adjustment of status. The BIA denied the motion to reconsider, stating:

> The respondents request that this Board reopen proceedings sua sponte to avoid manifest injustice or exercise jurisdiction on the basis of equitable tolling. While this Board has power to reopen or reconsider cases sua sponte in exceptional circumstances, sua sponte reopening is not meant to cure filing defects or circumvent the regulations, where enforcing them might result in hardship. Matter of J-J-, 21 I&N Dec. 976 (BIA 1997). Although we are sympathetic to the respondents' situation, neither this Board nor the Immigration Judge has any authority to grant the respondents' application for adjustment of status after the lead respondent's approved visa petition was automatically revoked by the death of the petitioner pursuant to 8 C.F.R. § 1205.1(a)(3)(iii)(B). Matter of United Airlines Flight UA802, 22 I&N Dec. 777 (BIA 1999) (stating that our jurisdiction is defined by regulation and that we have no jurisdiction unless it is affirmatively granted by the regulations). Unlike the provisions regarding immediate relative and family sponsored petitions at 8 C.F.R. § 1205.1(a)(3)(i)(C), which provides the Attorney General with discretion regarding

-4-

> revocation of a visa petition upon the death of a petitioner, the regulations relating to employment visa petitions do not provide any discretion regarding revocation when the petitioner dies. Therefore, we do not think that <u>sua sponte</u> reopening is warranted in the instant case. <u>Id.</u> We further find that the doctrine of equitable tolling does not apply to the instant case. <u>David</u> v. <u>Hall</u>, 318 F.3d 343, 345 (1st Cir. 2003) (stating that "equitable tolling" does not apply where the statute of limitation is jurisdictional). As we are denying the respondents' motion, we will deny the respondents' motion to stay removal.

Mahabir timely appealed from the initial BIA affirmance of the IJ's decision, and did not appeal the denial of reconsideration. We now affirm the initial December 13, 2002 BIA order.

## I.

We summarize the evidence presented by Mahabir at her removal proceedings.

Mahabir came to the United States from Trinidad and Tobago in 1989 on a visitor's visa. Soon after her arrival, she began working as a home attendant for an elderly woman, Anna Zarren. In January of 1990, Zarren filed an Application for Alien Employment Certification on behalf of Mahabir, which was approved by the Department of Labor on January 24, 1990. Zarren then filed for an employment visa for Mahabir, which was approved on April 8,

1991, effective the date of employment certification, January 24, 1990.[1]

Although Mahabir became eligible to apply for adjustment of status to that of lawful permanent resident immediately upon the approval of her employment visa, 8 C.F.R. § 1245.2, she did not apply for adjustment of status until November 1995, some four and a half years later. In early 1996, Mahabir had an interview with INS officials concerning her adjustment of status. Soon after the interview, on March 6, 1996, the INS requested documentation from Zarren concerning Mahabir's continued employment. Counsel sent the documentation to the INS; it was received on June 4, 1996. Mahabir heard nothing from the INS until April 11, 1997, when the INS sent her a letter indicating that it had not received the requested information from Zarren, and so her petition for adjustment of status had been terminated due to lack of prosecution. This was not correct: the INS had received the documents. Three days later, Zarren's counsel resent the requested information, along with proof that the information had been sent the previous June and had been

---

[1]    This appeal includes the claims of Mahabir's three children, Larry, Marsha, and Gershia. The children arrived in the United States on June 15, 1993 as non-immigrant visitors for pleasure with permission to remain for six months. They have remained in the country since that time. Their request for relief is completely dependent upon Mahabir being granted adjustment of status to that of lawful permanent resident. Thus, while the opinion will refer exclusively to Mahabir, the disposition of the case will apply to the children's claims as well.

received by the INS, and requested that the INS act upon her petition.

In November 1997, Zarren passed away. In October 1998, the INS, responding to requests by Mahabir's new counsel that it act upon her petition, replied that the materials it requested had still not made it to her file. Mahabir's counsel resent the information, again explaining that it had already been sent and received twice by the INS. Counsel also apparently informed the INS that Zarren had passed away. In October 1999, the INS notified Mahabir that her application for adjustment of status was denied because the death of her sponsoring employer automatically terminated her employment visa, 8 C.F.R. § 1205.1(a)(3)(iii)(B), rendering her ineligible for adjustment of status under 8 U.S.C. § 1255(a). The INS further issued Mahabir a notice to appear for removal proceedings. The subsequent procedural history before the agency is recounted above.

## II.

On appeal, Mahabir argues that the BIA abused its discretion by not applying the doctrine of equitable tolling as a basis to hear her application for an adjustment of status, regardless of the change in eligibility based on the death of her sponsor. Further, Mahabir argues that the INS engaged in affirmative acts of misconduct and bad faith that should estop it from being able to deny her request for equitable relief.

Concerned about the equities of this matter, we requested and received helpful additional briefing from both sides on whether the doctrine of equitable tolling was available to Mahabir.

As the respondent correctly points out, the issues of whether the automatic revocation of an employment visa under 8 C.F.R. § 1205.1(a)(3)(iii)(B) is subject to equitable tolling and whether the agency is equitably estopped in these circumstances were not preserved by presenting them first to the IJ and BIA. See Mendes v. INS, 197 F.3d 6, 12 (1st Cir. 1999). Petitioners are required to exhaust their remedies before the agency and we do not hear arguments ab initio. Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999). While Mahabir made a general plea to the IJ and in her appeal to the BIA to grant her equitable relief, she did not raise the claim that equitable tolling should apply until her motion to reconsider (which is not before us), and did not raise the claim that equitable estoppel should apply until this appeal. Both of these arguments were available to Mahabir but were not articulated or briefed earlier.

We review the BIA's determination that Mahabir was not eligible for adjustment of status for abuse of discretion. See Afful v. Ashcroft, 380 F.3d 1, 8 (1st Cir. 2004). The respondent's position, helpfully clarified in its supplemental filing, is that it may entertain applications for adjustment of status only when it has been authorized to do so by regulation. It has authority to do

so in the case of an alien whose application is based on present employment status sponsored by an employer. Nonetheless, under 8 C.F.R. § 1205.1(a)(3)(iii)(B), the BIA may not waive the requirement of a living sponsor for a visa petition. This is in marked contrast to the authority given in 8 C.F.R. § 1205.1(a)(3)(i)(C), which provides "humanitarian" discretion in the Attorney General to grant an adjustment upon the death of a relative where the petition for adjustment is based on relative status. This means, argues respondent, that the situation of someone in petitioner's position was considered in the regulations, a deliberate distinction was drawn, and the decision was made not to permit humanitarian concerns to alter the eligibility rule in the situation of employment-based petitions. Such a decision is not arbitrary, particularly given the deference agencies are granted in the interpretation of their own rules.

We also cannot say it is an abuse of discretion for the BIA to have failed to grant relief on grounds which were not argued to it--equitable estoppel and equitable tolling--nor is there any possible claim of arbitrariness arising out of inconsistency. See INS v. Miranda, 459 U.S. 14, 18 (1982) (holding that INS delay in processing application for adjustment of status, even if negligent, does not prevent it from denying application of petitioner who becomes statutorily ineligible during period of delay); Matter of Hernandez-Puente, 20 I. & N. Dec. 335 (BIA 1991) (holding that,

despite INS mistakes resulting in the failure of petitioner to obtain visa, the INS has no authority to grant adjustment of status nunc pro tunc).

We add one brief note. There are certainly inequities in this situation, raising sympathy for Mahabir. On the other side, it is far from clear that, even had the INS properly processed the requested information it received on June 4, 1996, it would have adjudicated her case before Zarren's death in November 1997. Further, the grant of adjustment of status is entirely within the discretion of the Attorney General. See 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if . . . ." (emphasis added)). There is no guarantee that had Mahabir's petition been adjudicated before Zarren's death, she would have been granted the status requested. Also, the INS's initial decision on October 28, 1999 informed Mahabir that she could renew her application for adjustment of status in her deportation proceeding. This would have required obtaining a valid visa, either through a new labor certification and subsequent employment visa, or in some other fashion. Apparently Mahabir elected not to do so, relying instead on the INS to grant her equitable relief from its normal rules. It has now been almost seven years since

the death of Mahabir's sponsor, and five years since the INS denied her application for adjustment of status based on her lack of a valid visa, and Mahabir has not secured a new employment-based visa.

Accordingly, we **<u>affirm</u>** the decision of the BIA.