# United States Court of Appeals
## For the First Circuit

Nos. 08-1537, 08-1972

RAMON ARCADIO GUTIERREZ-CASTILLO,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before
Boudin, John R. Gibson,[**] and Howard,
Circuit Judges.

John E. MacDonald, Allan M. Tow, Larochelle & MacDonald, Inc., John R. Grasso and Law Office of John R. Grasso, Inc. on brief for petitioner.
Shahrzad Baghai, Office of Immigration and Litigation, Department of Justice, Civil Division, Gregory G. Katsas, Assistant Attorney General, and Terri J. Scadron, Assistant Director, on brief for respondent.

June 4, 2009

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as respondent.

[**]Of the Eighth Circuit, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>.  Ramon Arcadio Gutierrez-Castillo is a native and citizen of the Dominican Republic, but he has resided in the United States since he immigrated in 1967 at age thirteen.  He has been married to Barbara Gutierrez, a U.S. citizen, for twenty-four years, and the couple has two teenage children who are American citizens.

In March 1979, Gutierrez's brother was shot to death. Gutierrez confronted the man he thought was responsible and killed him, purportedly in self-defense.  Thereafter, Gutierrez was convicted in New York state court of assault in the first degree and criminal possession of a weapon, and he also pled guilty to first degree manslaughter.  He spent eleven years in prison, was released in November 1990 and received an early discharge from parole in January 1994.  He had no prior criminal record and has not been in trouble with the law since.

On August 30, 1994, the Immigration and Naturalization Service ("INS")[1] issued an order to show cause charging Gutierrez with deportability (now called removability) as an alien convicted of a firearms offense designated under former section 241(a)(2)(C) of the Immigration and Nationality Act (currently section 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C) (2006)).  In January 1995, Gutierrez requested an adjustment of status; the immigration judge

_____

[1]INS was abolished in 2002 and its functions were transferred to the Department of Homeland Security.  Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2205.

("IJ") granted him a continuance to allow Gutierrez's wife to file an I-130 (immediate relative) visa petition. As the law then existed, Gutierrez could apply for adjustment of status and a section 212(h) waiver of inadmissibility (thus avoiding the bar worked by his convictions) upon approval of the I-130 petition.

As the statute stood in 1995, a waiver could potentially have been granted to Gutierrez, at the Attorney General's discretion, on two different bases.[2] Gutierrez' wife filed the I-130 in February 1995, it was approved in May 1996, and Gutierrez reported this to the IJ at a hearing on August 14, 1996. The IJ then gave him a month to apply for adjustment of status and a section 212(h) waiver and set a hearing date of November 14, 1996. Gutierrez filed both his application for adjustment of status and waiver on time.

Before the scheduled date of the hearing, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009-546, on September 30, 1996. IIRIRA expanded the definition of "aggravated felony" to include crimes of violence for which there was a term of

---

[2]One was a showing that the criminal activities rendering the applicant inadmissible occurred more than fifteen years before the date of his application for adjustment of status, that he was not a threat to the United States, and that he had been rehabilitated; the other was a showing that the applicant was the spouse, parent, son or daughter of a U.S. citizen or lawful permanent resident and that his citizen or resident family member would suffer extreme hardship were he denied admission. 8 U.S.C. § 1182(h) (1996).

imprisonment of one year or more and applied that definition retroactively, Pub. L. 104-208, 110 Stat. at 3009-627-28, § 321 (codified at 8 U.S.C. § 1101(a)(43)), thus encompassing Gutierrez's assault offense. It also amended section 212(h) by adding that

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . .

This amendment applied to "any alien who is in exclusion or deportation proceedings as of the date of enactment." Pub. L. 104-208, 110 Stat. at 3009-639, § 348.

The INS then added the charge that Gutierrez was deportable as an aggravated felon based on his assault conviction. Recognizing that the change in the law would likely preclude relief, the IJ went ahead with the hearing on November 14, 1996, and then issued an oral decision. He said that if he could do so he would have granted the adjustment of status and the waiver but he found that the waiver was now barred by IIRIRA. He called the retroactive application of the new restrictions unfair, saying that he could have advanced Gutierrez's application if he had anticipated the changes, but that he was bound to apply the law and could not pass on its constitutionality.

Gutierrez appealed to the Board of Immigration Appeals ("BIA") on various grounds, and his counsel indicated he would file

-4-

a brief.  After receiving one extension of time and filing for another, his counsel filed the brief on October 29, 1997, twenty-one days after his extended deadline.  The next day the BIA denied the second motion for the extension and, on May 23, 1998, denied Gutierrez's motion to accept the untimely brief.  On August 20, 2001, the BIA dismissed Gutierrez's appeal.  For reasons that are not explained, Gutierrez was not then deported.

On October 3, 2007, Gutierrez filed a motion to reopen to the proceeding, claiming that his prior counsel's failure to file a timely brief constituted ineffective assistance of counsel.  The untimely brief had raised arguments not addressed in the BIA's opinion, including the claim that Gutierrez should be permitted to apply for a section 212(h) waiver on a nunc pro tunc basis. Gutierrez also claimed that the BIA's decision had been sent to an incorrect address for his former counsel and that he had therefore never received notice of the decision.

On November 30, 2007, the BIA issued a decision denying the motion to reopen.  It found the motion untimely and declined to toll the deadline for the motion, which had long since expired.  It said that although the opinion had been sent to the wrong address, neither Gutierrez nor his former counsel had attempted to check its status until almost eleven years after the appeal was filed. Gutierrez does not press the issue in this court.

Addressing the merits of the ineffective assistance claim, the BIA found that Gutierrez suffered no prejudice from his prior counsel's failure to file a brief and so had no basis for relief, Zeru v. Gonzales, 503 F.3d 59, 72 (1st Cir. 2007), because IIRIRA precluded Gutierrez's obtaining a section 212(h) waiver. This court dismissed Gutierrez's petition for review after the Board granted his motion to reconsider on April 22, 2008.

On reconsideration, the BIA vacated its November 2007 order but again denied the motion to reopen. It conceded that the fact that Gutierrez would not now be eligible for a section 212(h) waiver "has no bearing on his eligibility for a nunc pro tunc section 212(h) waiver"; the purpose of such relief is to avoid the now-existing bar. However, the BIA denied the motion to reopen because Gutierrez had failed to show prejudice from his prior counsel's failure, this time because it found Gutierrez was not entitled to nunc pro tunc relief.

First, the Board said that the record did not show that Gutierrez had departed and returned to the United States since his 1980 convictions as (according to the Board) required by its precedent to grant the relief sought by Gutierrez.[3] Second, the

---

[3]As to this ground, Gutierrez says that the Board misread its precedents in suggesting that he had to leave and return in order to be eligible for relief and that anyhow he had left and returned after his conviction. The Board said that the latter assertion should have been presented earlier. Given our ground of disposition, this leave-and-return issue is moot.

Board said that there had been no error, a prerequisite for <u>nunc pro tunc</u> relief, such as improper delay in the administrative process due to bad faith, inadvertence or clerical mistakes.

Gutierrez filed a petition for review in this court on April 30, 2008, but also filed another motion to reconsider--this time challenging the April 22, 2008 decision. The BIA rejected his attack on its first ground (failure to depart and reenter) as belated and repeated its ruling on the second (lack of bad faith or inadvertence in the administrative process). Gutierrez filed a petition for review of that decision, which we consolidated with his petition to review the earlier order.

Our jurisdiction to review claims of aliens subject to deportation for an aggravated felony conviction is confined to legal and constitutional issues, 8 U.S.C. §§ 1252(a)(2)(C), (D), assuming that (as here) the alien does not challenge the fact of the underlying conviction. <u>Sousa</u> v. <u>INS</u>, 226 F.3d 28, 31 (1st Cir. 2000). Gutierrez claims that the IJ and BIA erred in finding that the applicable IIRIRA provisions had retroactive effect. He also says the BIA's denial of his request for a section 212(h) waiver <u>nunc pro tunc</u> was erroneous and failed to follow its own precedent, thereby denying him due process.

Whether the IIRIRA's pertinent provisions apply retroactively is a legal question reviewed <u>de novo</u>. <u>Lattab</u> v. <u>Ashcroft</u>, 384 F.3d 8, 14 (1st Cir. 2004); <u>see</u> <u>Fustaguio Do</u>

Nascimento v. Mukasey, 549 F.3d 12, 15 (1st Cir. 2008). Whether a civil statute applies retroactively depends on Congress' intent so long as it is clearly expressed. Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). Only if Congress' intent is not expressed directly does the court consider "whether [retroactive application] would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id.[4]

Under Landgraf, the IIRIRA provisions here do apply to Gutierrez because Congress expressly provided that they should. The definition of "aggravated felony" applies "regardless of whether the conviction was entered before, on, or after the date of enactment." Pub. L. 104-208, 110 Stat. at 3009-627-28, § 321; Seale, 323 F. 3d at 159; Sousa, 226 F.3d at 34-35. Similarly, the bar on section 212(h) waivers for anyone convicted of aggravated felonies applies to "any alien who is in exclusion or deportation proceedings as of the date of enactment." Pub. L. 104-208, 110 Stat. at 3009-639, § 348; INS v. St. Cyr, 533 U.S. 289, 319 & n.43 (2001).

Gutierrez ably argues that the nunc pro tunc doctrine should have been used to afford him relief or at least that the

_____

[4]This is subject, of course, to constitutional constraints, id. at 266-67, but Gutierrez does not argue that retroactive application of the statute is unconstitutional, nor could such an argument succeed under our precedent. Seale v. INS, 323 F.3d 150, 159-60 (1st Cir. 2003).

agency erred by not squaring its refusal with prior decisions. He says, in substance, that the new statutory bar would have been avoided if the agency had completed its proceedings before the statute came into effect (which the government does not dispute); and he argues that nunc pro tunc precedent would allow the agency in substance to retroactively grant the necessary waiver after the bar went into effect.

Nunc pro tunc, a Latin phrase meaning "now for then," refers to the power of a court to treat something done now--typically a court order--as effective as of an earlier date. See Mahabir v. Ashcroft, 387 F.3d 32, 33 (1st Cir. 2004). As with many legal terms or phrases (e.g., res judicata, jurisdiction, proximate cause, res gestae), nunc pro tunc denotes an outcome; but to determine whether and when the outcome is proper depends on often intricate rules derived from precedents, and an orderly or complete summary of the doctrine is not easy to provide.

The problem for Gutierrez in this instance is the precision and unqualified character of Congress' intent as expressed in the statute: that individuals in Gutierrez' position, fully qualified for waiver under pre-existing law and partway through the deportation process prior to enactment, should nevertheless be subject to the new bar--even though it existed neither at the time of the offense nor at the later time that the waiver was first sought. Unfair it may seem; unclear it is not.

Nunc pro tunc relief is often granted where a court has itself made an error such as failing to sign an order on an intended date, which it rectifies by labeling the order "nunc pro tunc" and making it effective as of the earlier date. See, e.g., United States v. Yeje-Cabrera, 430 F.3d 1, 16 (1st Cir. 2005). The agency here regards itself as in the same position and has regularly made use of nunc pro tunc relief in situations of administrative error, including waiver cases. E.g., Matter of P, 8 I. & N. Dec. 302, 303-05 (BIA 1959).

No such administrative error occurred here. On the contrary, the IJ postponed hearing Gutierrez' application for adjustment of status--doomed to failure absent a waiver--so Gutierrez' wife could obtain the visa that was a predicate for a waiver request. When the visa was finally obtained, a hearing was scheduled. It is sheer bad luck that before the scheduled hearing Congress intervened by passing the statute and making it effective even where the proceeding was underway.

Gutierrez' brief is persuasive that the IJs and the Board have not always insisted on an administrative error in order to provide nunc pro tunc relief. His counsel has provided examples where, for all that appears, the Board has granted such relief in sympathetic cases, seemingly avoiding bars that would otherwise apply. E.g., In re Alamutu, 2005 WL 952470 (BIA 2005) (unpublished). None of these cases is on all fours with

Gutierrez'; but neither do the Board decisions seem to form a fully consistent pattern.

Be that as it may, nunc pro tunc relief in this case cannot be squared with Congress' language or evident intent. The only basis would be disagreement with Congress' policy of applying its new ban in pending deportations. The IJ posed the dilemma, favored relief and understood that he did not have power to grant it. Closely on point is Fernandes Pereira v. Gonzales, 417 F.3d 38, 45 (1st Cir. 2005), where we said of a nunc pro tunc request, "[f]or the INS to grant, or this court to order, waiver relief now would be to provide a form of relief expressly withdrawn by the statute."

Perhaps in a situation where nunc pro tunc relief is traditionally well established, the statute would not automatically foreclose it. If the IJ had carelessly forgotten to schedule the hearing and the bill passed in the meantime, there might be an argument in Gutierrez' favor; as with equitable tolling in statutes of limitations, Congress might be taken to have acted within the context of existing background law. See, e.g., Trapp v. Spencer, 479 F.3d 53, 59-60 (1st Cir. 2007). We need not decide the issue.

But whatever the possible tensions in Board precedent, there is no systematic or avowed practice of using nunc pro tunc relief to evade Congress' policy decisions in cases where the deportee or his situation happens to be sympathetic. Congress

knows how to create discretionary relief for draconian immigration restrictions; that is the function of the discretionary waiver sought by Gutierrez. But Congress expressly withdrew that discretion in the present class of cases, underscoring its firmness by making the new restrictions effective in pending cases.

What Congress has taken away categorically it can presumably give back in an individual case through a special bill. That, or possibly some less obvious form of executive relief unknown to us, is about all that remains available to Gutierrez. The petitions for review must be <u>denied</u>.