# United States Court of Appeals
## For the First Circuit

No. 07-2608

LUZIA FUSTAGUIO DO NASCIMENTO,

Petitioner,

v.

MICHAEL B. MUKASEY,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin, <u>Circuit Judges</u>,
and Schwarzer,<sup>*</sup> <u>District Judge</u>.

<u>Jeffrey B. Rubin</u>, on brief for petitioner.
<u>Patrick J. Glen</u>, Attorney, Office of Immigration Litigation,
Civil Division, Department of Justice, <u>Gregory G. Katsas</u>, Acting
Assistant Attorney General, Civil Division, and <u>Emily Anne Radford</u>,
Assistant Director, on brief for respondent.

December 1, 2008

---

<sup>*</sup> Of the District of Northern California, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>. Petitioner Luzia Fustaguio do Nascimento ("Oliveras," her married surname) is a Brazilian citizen who entered the United States without inspection and was subsequently placed in deportation proceedings. She did not attend her deportation hearing, allegedly as a result of her attorney's ineffective assistance, and was ordered deported in absentia. More than eleven years after the deportation hearing, Oliveras seeks judicial review of the denial by the Board of Immigration Appeals ("BIA") of her second motion to reopen her deportation proceedings. After careful consideration, we deny the petition for judicial review.

## I. Background

The facts are essentially undisputed.

Oliveras is a Brazilian citizen who entered the United States without inspection by crossing the Mexican border in November 1994. On March 25, 1996, the Immigration and Naturalization Service or "INS" (the predecessor entity to the United States Citizenship and Immigration Services, or "USCIS") arrested Oliveras during a raid at her place of work and placed her in deportation proceedings. On that day Oliveras was personally served with an Order to Show Cause,[1] which posited that Oliveras

---

[1]  Prior to April 1, 1997, deportation proceedings commenced with the service of an "Order to Show Cause." Subsequent to that date the "Order to Show Cause" was replaced by the "Notice to Appear." <u>See</u> <u>Peralta</u> v. <u>Gonzáles</u>, 441 F.3d 23, 26 n.4 (1st Cir. 2006).

was removable. The Order highlighted the importance of promptly notifying the INS about any change of address. The Order was served in English, a language Oliveras did not understand.

Shortly after her arrest, Oliveras hired attorney David Luff to represent her in her immigration proceedings. She paid him approximately $800 in legal fees. When Oliveras moved to a new address she notified Attorney Luff, who indicated that he would file the appropriate change of address forms with the INS. He never did.

Shortly thereafter, the INS mailed two Notices of Hearing via certified mail to Oliveras' old address. Both were returned by the U.S. Postal Service as "attempted, not known."[2] She never learned of her hearing date and consequently did not attend. Oliveras' hearing was held on March 6, 1997. Due to her absence, the immigration judge ("IJ") entered an in absentia deportation order against Oliveras on March 7, 1997. Notice of the deportation order was sent via certified mail to Oliveras' old address. This time, the mailed notice was not returned. However, Oliveras states that she never received it. She did not appeal the order.

Attorney Luff never contacted Oliveras regarding the deportation order or her immigration case. After some period of time, Oliveras contacted an individual named Lee Gillitlie, who

---

[2]  Oliveras admits that service of notice was proper under the applicable immigration regulation. See 8 C.F.R. § 1003.13.

knew Attorney Luff, and asked him to make some inquiries regarding her immigration case. Gillitlie learned that Oliveras had been ordered deported in absentia and that Attorney Luff had taken no action regarding her case.[3] Oliveras contends that Gillitlie never shared this information with her.

On July 28, 1997, Oliveras married an American citizen to whom she remains married to this day. On April 17, 2001, Oliveras' husband filed a petition to adjust Oliveras' immigration status. As a part of the status adjustment process, on October 11, 2001, Oliveras attended an interview at which she was told that, although she was prima facie eligible for adjustment of status, her petition could not be granted because an order of deportation had been entered against her.

Thereafter, Oliveras hired a second attorney who, on November 4, 2002, filed a motion to reopen Oliveras' immigration proceedings on grounds that she had been denied effective assistance of counsel by Attorney Luff. The Immigration Judge ("IJ") denied this motion on December 20, 2002, finding that it was time-barred. Oliveras appealed this denial to the BIA, who on February 5, 2004, affirmed the IJ's order. Specifically, the BIA found that Oliveras had failed to satisfy the requirements for the

---

[3] Attorney Luff later had his bar certification temporarily suspended on two different occasions -- in 1999 and 2001 -- due to his failure to provide adequate legal services in the immigration cases of a number of clients.

establishment of an ineffective assistance of counsel claim under BIA precedents in In re Assaad, 23 I. & N. Dec. 553 (BIA 2003) and Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). Oliveras did not seek judicial review.

Three years later, on March 30, 2007, Oliveras' fourth lawyer filed a second motion to reopen Oliveras' immigration proceedings directly with the BIA. In that petition, Oliveras alleged that she had fixed the shortcomings of her ineffective assistance claim by fulfilling all of the Lozada requirements.[4] The BIA nonetheless denied this motion on September 27, 2007, finding that it was both time and number-barred. The BIA also held that equitable tolling did not apply to Oliveras' second petition because Oliveras had failed to exercise due diligence. Oliveras now seeks judicial review.

## II. Discussion

### A. Standard of Review

Motions to reopen removal proceedings are disfavored as contrary to the "compelling public interests in finality and the expeditious processing of proceedings." Guerrero-Santana v.

---

[4] To assert a claim of ineffective assistance of counsel an alien must (1) submit an affidavit detailing the agreement entered into counsel with respect to the actions to be taken; (2) inform counsel of the allegations of ineffective assistance and give him the opportunity to respond; and (3) file a complaint with the appropriate disciplinary authorities, or adequately explain why no filing was made. See Assaad, 23 I. & N. Dec. at 556 (citing Lozada, 19 I. & N. Dec. at 639-40).

-5-

Gonzáles, 499 F.3d 90, 92 (1st Cir. 2007) (quoting Raza v. Gonzáles, 484 F.3d 125, 127 (1st Cir. 2007)). Consistent with this policy, we review the BIA's denial of a motion to reopen under a deferential abuse of discretion standard. Kechichian v. Mukasey, 535 F.3d 15, 22 (1st Cir. 2008). Accordingly, we will uphold the denial of a motion to reopen unless we conclude that the BIA either committed a material error of law or exercised its authority in an arbitrary, capricious or irrational manner. Id. In carrying out this inquiry, we review the BIA's findings of law de novo, granting due deference to the BIA's reasonable interpretation of the statutes and regulations within its purview. See Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008); Rotinsulu v. Mukasey, 515 F.3d 68, 72 (1st Cir. 2008).

### B. Motion to Reopen

In general, the right of an alien in removal proceedings to file a motion to reopen is limited both numerically and temporally. Guerrero-Santana, 499 F.3d at 93. Thus, an alien may ordinarily file only one motion to reopen a removal proceeding and that motion must be filed within ninety days of the issuance of the final administrative decision, in this case, the final deportation order. Id.; see also 8 C.F.R. § 1003.23(b)(1). Because the present petition involves Oliveras' second motion to reopen, which was filed more than ten years after the issuance of the final deportation order against her, Oliveras relies on statutory

-6-

exceptions to the filing deadline, and alternatively, on due process and equitable tolling arguments to support her contention that the BIA abused its discretion in denying her motion. We are not persuaded.

### 1. Exceptional Circumstances

Oliveras argues that the time and numerical limitations provisions applicable to her case are those provided by 8 C.F.R. § 1003.23(b)(4)(iii)(A), which govern orders entered in absentia, rather than the general provisions at 8 C.F.R. § 1003.23(b)(1). However, for the reasons described herein, even if applicable, this provision would not sufficiently extend the filing period as to make timely the motion to reopen at issue in this appeal.

Despite the general rule, the regulations contain, among other exceptions, an exception to the ninety day filing deadline for orders entered in absentia. 8 C.F.R. at § 1003.23(b)(4). That exception provides that if the order of deportation was entered in absentia and the alien shows that the failure to appear was due to "exceptional circumstances beyond the control of the alien," she may file her motion to reopen within an extended 180-day period from the date of issuance of the order. Id. at § 1003.23(b)(4)(iii)(A)(1); see also Guerrero-Santana, 499 F.3d at 93. Moreover, there is no numerical limit on the number of motions to reopen an alien may file pursuant to this provision. See 8 C.F.R. § 1003.23(b)(4)(iii)(D). Oliveras relies on these

-7-

provisions to argue that the ineffective assistance of her first attorney, in failing to change her address on file with the INS or notify her of the date of her deportation hearing, constitutes "exceptional circumstances" that justified an extension of the time available to her to move to reopen her immigration proceedings.

This court has held that ineffective assistance of counsel may qualify as an "exceptional circumstance" for the purpose of applying section 1003.23(b)(4)(iii)(A). See Beltre-Veloz v. Mukasey, 533 F.3d 7, 10 (1st Cir. 2008); Saakian v. INS, 252 F.3d 21, 25 (1st Cir. 2001). We will assume, without deciding, that Attorney Luff's conduct constituted assistance sufficiently ineffective to qualify as an exceptional circumstance. However, even if Oliveras showed exceptional circumstances, the regulation only allows 180-days from issuance of the in absentia deportation order to file a motion to reopen the proceedings. Thus, even affording Oliveras the benefit of the extended 180-day filing period for motions to reopen issued in absentia, Oliveras' second motion to reopen, which is the one at issue in this appeal, while not number-barred, would nevertheless still be time-barred. This motion was filed on March 30, 2007, ten years after Oliveras was ordered deported in absentia -- well past the conclusion of section 1003.23(b)(4)(iii)(A)'s extended 180-day limitations period. Therefore, even if Oliveras was correct that section 1003.23(b)(4)(iii)(A) governs her case, the BIA was nevertheless

well within its discretion in denying Oliveras' clearly untimely motion.

## 2. Due Process Violation

Oliveras alternatively argues that her due process right to present her claim on the merits was violated by the ineffective assistance of her first attorney. While aliens in a deportation proceeding do not have a constitutional right to counsel,[5] they are entitled to due process in such a proceeding. See Saakian, 252 F.3d at 24. "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." Rodríguez-Lariz v. INS, 282 F.3d 1218, 1226 (9th Cir. 2002) (internal quotation mark omitted); accord Guerrero-Santana, 499 F.3d at 93 (holding that "ineffective assistance of counsel in a removal proceeding may constitute a denial of due process if (and to the extent that) the proceeding is thereby rendered fundamentally unfair")(citing Lozada

---

[5] The U.S. Attorney General has recently issued orders directing the BIA to refer three cases to him for review of several issues, inter alia: (1) whether there is a "constitutional right to effective assistance of counsel" in immigration proceedings and (2) whether, regardless of whether such a right exists, the Attorney General may grant a remedy "in response to assertions by an alien that his or her counsel's performance was deficient." See Matter of J-E-C-M-, A.G. Order No. 2990-2008 (Aug. 7, 2008); Matter of Bangaly, A.G. Order No. 2991-2008 (Aug. 7, 2008); Matter of Compean, A.G. Order No. 2992-2008 (Aug. 7, 2008). No decision by the Attorney General has been issued on this matter as of the date of publication of this opinion.

v. INS, 857 F.2d 10, 13 (1st Cir. 1988)). Oliveras asserts that she has met this standard because Attorney Luff's actions kept her from presenting her case against deportation before an immigration judge. We disagree.

Oliveras' due process argument is premised on the notion that her lawyer's ineffectiveness was the cause of her failure to file a timely motion to reopen her deportation proceedings and rescind the deportation order. Throughout her appellate brief, Oliveras attempts to trace this alleged causal link between her first attorney's ineffective assistance and the untimeliness of her subsequent motions to reopen. However, she has been unable to establish that such a link exists.

Oliveras now challenges the denial of her motion to reopen. However, any ineffective assistance by Attorney Luff would only have caused Oliveras to not appear before the IJ on the date of her scheduled removal hearing in March 1997. As a result, she was ordered deported in absentia. Nevertheless, five years elapsed from the time of entry of Oliveras' deportation order to the filing of her first motion to reopen in November 2002. Given that Oliveras was not in contact with Attorney Luff during this period but knew that her immigration status was uncertain, this long delay cannot be attributed entirely to him. Rather, even if the delay in Oliveras' discovery of the in absentia deportation order can be attributed to the ineffective assistance of Attorney Luff, her

failure to promptly move to reopen upon learning of the entry of the order certainly cannot be attributed to him. The latest possible date on which Oliveras could have learned about her in absentia deportation order was the October 11, 2001 adjustment of status interview. At this time Oliveras was represented, not by Attorney Luff, but by a different attorney, against whom no ineffective assistance claim has been made. Nevertheless, she waited another full year before filing her first motion to reopen. Moreover, between the BIA's affirmance of the denial of Oliveras' first motion to reopen on February 5, 2004 to the filing of her second such motion in March 2007, three additional years passed. Oliveras was, again, not in contact with Attorney Luff during this period, and thus, cannot attribute the extreme tardiness of her second filing to his ineffective assistance.

Though Attorney Luff may have caused Oliveras to miss her initial appearance before the IJ, Attorney Luff did not cause Oliveras' delay in filing her first motion to reopen after she learned of the deportation order entered against her, nor did he cause her delay in filing the second motion to reopen, nor was he responsible for the faulty pleading in the first motion to reopen that failed to meet the <u>Lozada</u> requirements for stating an ineffective assistance of counsel claim.[6] Simply stated, the fact

---

[6] Oliveras does not assert an ineffective assistance claim against the attorney who handled that filing.

-11-

that Oliveras ultimately did not get the chance to go before an IJ cannot be attributed solely to any ineffective assistance by Attorney Luff. Given that a mechanism existed under 8 C.F.R. § 1003.23(b)(4)(iii)(A) to cure the harm caused by Attorney Luff's incompetence and secure another opportunity to state her case against deportation, which Oliveras failed to take advantage of, it cannot be said that Oliveras' immigration proceedings were rendered "fundamentally unfair" on account of the ineffective assistance she received. Hence, Oliveras' due process rights were not violated, and the BIA acted within its discretion in declining to grant her relief. See Guerrero-Santana, 499 F.3d at 93 (holding that the merits of petitioner's ineffective assistance claim were immaterial as counsel's shortcomings could not account for petitioner's failure to timely file his second motion to reopen).

### 3. Equitable Tolling

Finally, Oliveras asserts that the ineffective legal representation she received from her first attorney entitled her to equitable tolling of the filing period, so as to excuse the late filing of her second motion to reopen. The equitable tolling doctrine, applicable to all federal statutes, "provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.'" Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004)(quoting David v. Hall, 318 F.3d 343,

-12-

345-46 (1st Cir. 2003)). This Circuit has yet to address the question of "whether the BIA has either the authority or the obligation" to apply equitable tolling in the immigration context. Guerrero-Santana, 499 F.3d at 93. What is well-established, however, is that the doctrine of equitable tolling should be "sparingly invoked." Jobe v. INS, 238 F.3d 96, 100 (1st Cir. 2001) (en banc). Equitable tolling is generally unavailable to excuse a party who has failed to exercise due diligence. See Beltre-Veloz, 533 F.3d at 11 (holding that alien's failure to exercise due diligence in not inquiring into immigration status for eight years despite knowing that removal proceedings had commenced precluded equitable tolling of deadline for filing motion to reopen); Jobe, 238 F.3d at 101 (stating that petitioner was insufficiently diligent in pursuing his asylum application and therefore was not entitled to equitable tolling, where he knew that IJ had ruled on his application but failed to take action to protect his rights for over six months). Moreover, where the BIA's decision that equitable tolling is unavailable was based "on a factual determination that [the petitioner] had not exercised due diligence," we do not have jurisdiction to review the BIA's decision. Boakai v. Gonzáles, 447 F.3d 1, 4 (1st Cir. 2006).

As discussed above, Oliveras has failed to account for either the five-year delay in filing her first motion to reopen or the subsequent three-year lapse before the filing of her second

motion.  At the very latest, on October 11, 2001, Oliveras knew that she had been ordered deported in absentia.  At that point, Oliveras should have taken a proactive approach to resolving her immigration troubles.  However, she waited another year -- until November 20, 2002 -- to file her first motion to reopen with the immigration judge, the denial of which was upheld by the BIA in February 2004.  At that point, rather than seeking judicial review, she let another three years pass, until March 2007, before filing the subsequent motion to reopen that is at the heart of this appeal.  Given Oliveras' casual approach to her immigration proceedings, it cannot be said that the circumstances that caused the late filing of her second motion to reopen were "out of [her] hands."  See Jobe, 238 F.3d at 100 (quoting Salois v. Dime Savings Bank, 128 F.3d 20, 25 (1st Cir. 1997) for "principle [] that equitable tolling 'is appropriate only when the circumstances that cause a [party] to miss a filing deadline are out of his hands.'" (alteration in original)).

For the foregoing reasons, we hold that the BIA made a reasonable factual determination that Oliveras failed to demonstrate sufficient diligence to justify equitably tolling the motions deadline.  We thus lack authority to review its denial of relief.

## III. <u>Conclusion</u>

For the foregoing reasons, we deny this petition for judicial review.

**<u>DENIED</u>**.