# United States Court of Appeals
## For the First Circuit

---

No. 16-2474

JUAN RAMIREZ MATIAS,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

---

Jason Panzarino and The Law Office of Johanna Herrero on brief for petitioner.
Allison Frayer, Trial Attorney, Office of Immigration Litigation, Civil Division, Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Jessica A. Dawgert, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, on brief for respondent.

---

September 8, 2017

---

**THOMPSON**, **Circuit Judge**. Petitioner Juan Ramirez Matias ("Ramirez") challenges the Board of Immigration Appeals's ("BIA") denial of his motion to exercise its sua sponte authority to reopen his case and grant his request for cancellation of removal. We find that even if we have jurisdiction to consider his appeal, we must still deny Ramirez's petition.

## BACKGROUND

Ramirez is no stranger to this court: in 2014, he petitioned for review of the BIA's denial of his application for cancellation of removal (as well as some other forms of relief that are not relevant to this appeal). Ramirez-Matias v. Holder, 778 F.3d 322, 324 (1st Cir. 2015). Because we've laid out most of the relevant facts once before, here we keep it brief.

Ramirez was served with a notice to appear in 2008, alleging that he was removable because he was "[a]n alien present in the United States who has not been admitted or paroled." See 8 U.S.C. § 1182(a)(6)(A)(i). Through counsel, he conceded the point but applied for cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, §§ 201-204, 111 Stat. 2160, 2196-2201 (codified as amended in scattered sections of 8 U.S.C.).[1] NACARA applicants must make

---

[1] We note here that Ramirez has been represented at every stage of these proceedings.

- 2 -

a handful of showings by a preponderance of the evidence to be eligible--most relevant here is that the applicant be "a person of good moral character," 8 C.F.R. § 1240.66(b)(3)--and even then "the applicant must . . . persuade the immigration court that he merits a favorable exercise of its discretion." Ramirez-Matias, 778 F.3d at 325-26.

Ramirez's application was denied in 2012 after the Immigration Judge ("IJ") found that Ramirez had not shown either. Specifically, the IJ noted that Ramirez was arrested twice: once in 1994 and once in 2006 for "very serious assaultive behavior towards the mothers of his children." Both women testified that Ramirez did not hit them, and Ramirez himself denied the "assaultive behavior," claiming that the police lied and both incidents were misunderstandings. But for his part, the IJ thought it more likely that Ramirez was the one telling a lie. Ramirez appealed, but the BIA affirmed: there was no "clear error" in the IJ's "finding that the police reports were more reliable than his or his witness[es] statements."

Ramirez petitioned this court for review of that finding. Id. at 324. Because NACARA relief is a discretionary determination, we usually do not have jurisdiction to review a BIA order denying such relief. Id. at 326. There is an exception to this general rule "when the claim presented to a federal court embodies colorable constitutional claims or questions of law."

- 3 -

Id. Ramirez's petition contained neither. Instead, we found his claim boiled down to a "disagreement with the agency's view of the relative credibility of the police reports and the testimony proffered to contradict them. That is a factual determination and, therefore, a determination that we have no jurisdiction to review." Id. So, it was back to the drawing board for Ramirez.

In 2016, over a year later, Ramirez fired his next shot at the IJ's decision, and this time he had an argument bearing the "constitutional" label at the ready. In his "Motion to Reopen Pursuant to this Board's Sua Sponte Authority," Ramirez argued that his procedural-due-process rights to a fair hearing were violated because of translation difficulties. We will get into the details of the claim a little later, but for now here's the gist: Ramirez and his wife, Lucia Ahilon Pablo ("Ahilon"), are native speakers of Todos Santos Mam, but he used a Spanish interpreter and Ahilon's interpreter spoke a different dialect of Mam. As a result, some things, he says, were "lost in translation." According to Ramirez's argument, the IJ's adverse credibility finding (that is, the IJ's decision to trust the police reports over Ramirez's story) resulted from these mistranslations, so he should get a do-over with an interpreter who speaks Todos Santos Mam. Ramirez conceded his motion was untimely--and he offered no explanation for his nearly four-year delay in bringing

- 4 -

these alleged hearing-level translation difficulties to the BIA's attention.  The BIA denied the motion:

> The motion is untimely filed and has not been shown to come within an exception to the time limits imposed by law on motions to reopen or reconsider removal proceedings.  The respondent has offered no explanation for the delay in making the due process and other arguments now being made.  Further, we do not find that exceptional circumstances warranting the sua sponte reopening of these proceedings have been demonstrated.  Accordingly, the untimely motion is denied.

(citations omitted).

Undeterred, Ramirez appealed again, and so here we are today.

## ANALYSIS

Ramirez renews his mistranslation-based due-process claim on appeal, and adds one more:  the BIA abused its discretion by failing to give a reasoned explanation of its decision not to exercise its sua sponte authority.[2]  The government counters that this court does not have jurisdiction to review either claim.  We briefly address the question of our jurisdiction, but find it's

---

[2] If Ramirez thinks this was a motion under 8 C.F.R. § 1003.2(c)(2) or some other provision of the immigration laws (he notes in his appellate brief that the "title of a motion is not dispositive" and his motion was not directed "simply" to the BIA's sua sponte authority) we consider the argument waived for lack of developed argumentation--he doesn't do us (or himself) the favor of explaining what else the motion could have been based on.  See Caldero-Guzman v. Holder, 577 F.3d 345, 349 (1st Cir. 2009).

not as clear-cut as the government says--so, we dodge it and explain why Ramirez still cannot prevail.

## I. Jurisdiction

We start with the jurisdictional issue. Ramirez appealed to the BIA's sua sponte authority under 8 C.F.R. § 1003.2(a), which provides that "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." As the government points out, we have repeatedly held that we do not have jurisdiction to review challenges to the BIA's failure to exercise its sua sponte authority because such decisions are "committed to its unfettered discretion." Luis v. INS, 196 F.3d 36, 40 (1st Cir. 1999). Because "no judicially manageable standards are available for judging how and when [the BIA] should exercise its discretion, . . . it is impossible to evaluate [the] agency action for 'abuse of discretion'" so "the very nature of the claim renders it not subject to judicial review." Id. (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)); see also Neves v. Holder, 613 F.3d 30, 35 (1st Cir. 2010); Caldero-Guzman, 577 F.3d at 348.

But Ramirez claims that our case law precluding our jurisdiction over the BIA's failure to exercise its sua sponte authority should not stop us from exercising jurisdiction in this case. He seems to give us two reasons why. First, he claims-- without explanation--that the Supreme Court's decision in Kucana

v. Holder, 558 U.S. 233 (2010), gives us jurisdiction to review appeals to the BIA's sua sponte authority. His Kucana-based argument is a non-starter: we have already rejected the contention that Kucana, 558 U.S. at 252 n.18, in which the Supreme Court explicitly took no position on the Courts of Appeals' practice of declining to exercise jurisdiction over sua sponte matters, has any impact on our no-jurisdiction rule. Neves, 613 F.3d at 35. Ramirez gives us no reason to change course now.

Second, even if our pre-Kucana no-jurisdiction rule still holds sway, Ramirez says we have jurisdiction by statute: 8 U.S.C. § 1252(a)(2)(D) provides that "[n]othing in . . . any . . . provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." His claims are constitutional, he says, ergo we have jurisdiction to consider them on the merits under § 1252(a)(2)(D).

Unlike his first argument, there might be some meat on these bones. Our no-jurisdiction rule originated with Luis, 196 F.3d at 40, but that case was decided years before the 2005 passage of § 1252(a)(2)(D), so the fact that we announced such a blanket rule then does not decide whether § 1252(a)(2)(D) gives us jurisdiction today. See REAL ID Act of 2005, 119 Stat. 231; 14A

- 7 -

Arthur R. Miller, et al., Federal Practice and Procedure § 3664 (4th ed. 2008). Furthermore, we have previously identified § 1252(a)(2)(D) as a potential jurisdiction-restorer over constitutional claims brought in motions for sua sponte relief. Guerrero v. Holder, 766 F.3d 122, 126 n.12 (1st Cir. 2014) (noting the government's contrary argument, but declining to decide the question because the petitioner made no § 1252(a)(2)(D)-related argument). But, we are aware of no First Circuit case--and the parties point us to none--in which we have addressed whether § 1252(a)(2)(D) has any effect on Luis's no-jurisdiction rule.

Nonetheless, as Ramirez points out, the Seventh Circuit has found that § 1252(a)(2)(D) does, indeed, give it jurisdiction to consider legal and constitutional claims presented in appeals to the BIA's sua sponte authority. That court reasons that "the general 'no law to apply' principle of judicial review of administrative action"--that is, the principle we applied in Luis to find that we had no jurisdiction to review sua sponte matters-- "has been superseded in the immigration context by 8 U.S.C. § 1252(a)(2)[(D)]." Cevilla v. Gonzales, 446 F.3d 658, 660 (7th Cir. 2006). In that circuit, then, appellate jurisdiction "extends to the Board's refusal to reopen . . . removal proceedings sua sponte" where the petitioner "raises a constitutional claim or legal question with regard to his underlying order of removal." Zambrano-Reyes v. Holder, 725 F.3d 744, 751 (7th Cir. 2013). Some

- 8 -

other circuits agree. Nawaz v. Holder, 314 F. App'x 736, 737 (5th Cir. 2009) (per curiam) (no jurisdiction to review sua sponte denial, with the exception of "constitutional challenges that were raised before the BIA"); Tamenut v. Mukasey, 521 F.3d 1000, 1005 (8th Cir. 2008) (per curiam) (same). On the other hand, in examining its own Luis-based no-jurisdiction rule, the Sixth Circuit has found that § 1252(a)(2)(D) creates no such constitutional-claim toehold. Rais v. Holder, 768 F.3d 453, 464 (6th Cir. 2014); see Gor v. Holder, 607 F.3d 180, 186 (6th Cir. 2010). After all, it reasons, § 1252(a)(2)(D) only restores jurisdiction where it was first taken away by some "other provision of [that] chapter," so the statute "has no bearing on the question of whether courts may review the BIA's exercise of its sua sponte authority, for which no chapter of any legislation provides." Rais, 768 F.3d at 464.

Although Ramirez's briefs bring this jurisdictional point to our attention, he does not explain what we should do about it (other than take jurisdiction to favorably decide the merits of his appeal, of course). In fact, Ramirez's arguments do not transcend his bald assertions that Kucana, Zambrano-Reyes, and § 1252(a)(2)(D) give us jurisdiction here. The government, for its part, argues that we never have jurisdiction over appeals to the BIA's sua sponte authority, but makes no mention of this constitutional-claim wrinkle. But we don't have to decide what to

- 9 -

do about the issue now.  See Seale v. INS, 323 F.3d 150, 157 (1st Cir. 2003) (taking a similar approach).  The problems with Ramirez's appeal are titanic, and the jurisdictional question is just the tip of the proverbial iceberg.  So, we assume the § 1252(a)(2)(D) exception applies and we carry on.

## II.  Mistranslation-Based Due-Process Claim

Ramirez is a native speaker of Todos Santos Mam, but he elected to use a Spanish interpreter at his hearing.  According to Ramirez, he and the interpreter did not always understand each other, so parts of his testimony were "lost in translation."[3] Ramirez claims that Ahilon's testimony (Ramirez's wife and witness) was also infected by translation errors because she is a native speaker of Todos Santos Mam but the interpreter spoke a different Mam dialect.  Between the two, Ramirez claims that the translation services provided at his hearing were so inadequate

---

[3] According to his brief on appeal, Ramirez "specifically chose to proceed with a Spanish interpreter because he had heard and noticed mistranslations with the Mam interpreter during his wife's testimony, and therefore decided it would be safer to proceed in Spanish, which is not his native language."  The brief cites nothing in the record to support this contention--and the hearing transcript reveals that Ramirez testified before his wife. According to his affidavit, Ramirez elected to proceed in Spanish because he believed he "was more than capable [of] speaking in Spanish" and "knew how few people spoke Mam--particularly the Todos Santos dialect," so "it made sense for [him] to proceed with a Spanish interpreter."  In any case, we take the gist of his argument to be that miscommunications arose from his decision to use a Spanish interpreter because he is not a native Spanish speaker.

- 10 -

that they violated his due-process rights.  First, we present the relevant facts and Ramirez's argument, then we give our take.

**a)  Background**

Ramirez testified first at his hearing.  His primary mistranslation-related contention is about who he said called the police on the night of one of his arrests.  When asked by his attorney to explain what happened, Ramirez says that he explained in Spanish, "my mother-in-law was dead so my father-in-law called the police, my wife was yelling in Mam and they didn't know what was going on."  Although this version of events also appears in the transcript, he claims in his appellant brief that the audio recording of the hearing shows that the translator mistranslated this statement as:  "my father-in-law was dead so my mother-in-law called the police."[4]  In his affidavit, Ramirez gives a different version of events, claiming that the translator erred because "I did not state anything about my father-in-law contacting

_____

[4] We include this point here to explain the basis of Ramirez's argument on appeal.  But Ramirez did not provide us with a copy of the recording or an alternative transcript to show that this so-called misinterpretation occurred.  It is his duty to support his claims with record evidence.  See Fed. R. App. P. 10(c), 11(a); De Araujo v. Gonzales, 457 F.3d 146, 155 (1st Cir. 2006) (citing 8 C.F.R. § 1003.2(c)(1)); United States v. One Motor Yacht Named Mercury, 527 F.2d 1112, 1113 (1st Cir. 1975) ("The burden is on the appellant to provide this court with an appendix sufficient to support its points on appeal.").  Because he did not, we cannot evaluate this part of his claim.  But as we will explain, even if we assume the events occurred as described in his brief, he still cannot make out a due-process claim.

the police."  His appeal brief does not explain the discrepancy between his affidavit and his argument on appeal.  However, it does point out that Ramirez later testified that he "never knew who called the police."

Immediately after Ramirez explained (according to the transcript and his argument to us, anyway) that his father-in-law called the police, his Spanish-language interpreter asked to address the Judge, then said:  "Would it be okay to ask him if he feels more comfortable in Mam than in Spanish?  It may not be the case, but I have the feeling that it could be."  The interpreter asked Ramirez, then said, "Spanish is okay."  In his affidavit, Ramirez claims that "there were also points in which the interpreter sought to clarify some of the things I was saying in response to the questioning--as if she were unable to understand the Spanish that I was speaking."  No such requests for clarification appear in the transcript.

As for Ramirez's wife, Ahilon testified subsequent to Ramirez and through a Mam interpreter.  She avers in an affidavit filed in support of Ramirez's motion that she had "difficulty understanding the interpreter," and she thinks the interpreter had difficulty understanding her, too.  As a result "I surely expressed to the interpreter . . . my difficulties either by asking for repetition and/or rephrasing."  According to Ramirez's brief, the audio recording of the hearing shows that the interpreter asked

- 12 -

Ahilon to repeat herself twice during her testimony. These instances do not appear in the transcript. Neither Ramirez nor Ahilon objected to the translations rendered at the hearing, nor did Ramirez air this argument in his first round of appeals--as the BIA pointed out in its order denying sua sponte relief.

Nevertheless, Ramirez now argues that these aggregated translation difficulties violated his due-process rights. Had he "been afforded a competent translation of his testimony as is his due process right," he argues, "he would have been found credible by the Immigration Judge"--meaning the IJ would have believed his story about what happened the nights he was arrested, in lieu of the police reports--so the IJ would have found him to be a person of "good moral character" and granted his request for NACARA relief. The government disagrees.

### b) **Mistranslation Analysis**

We review Ramirez's mistranslation-based due-process claim de novo, bearing in mind that "not every procedural misstep or difficulty raises anything like a constitutional issue. Procedural due process protects a right to a fundamentally fair proceeding; but few proceedings are perfect and one can have real errors, including ones that adversely affect a party's interests, without automatically violating the Constitution." Teng v. Mukasey, 516 F.3d 12, 17 (1st Cir. 2008). To prevail on a translation-based due-process claim, allegations of translation

- 13 -

difficulties are not enough; the petitioner must show that "a more proficient or more accurate interpretation would likely have made a dispositive difference in the outcome of the proceeding."  Id. at 17-18 (quoting Harutyunyan v. Gonzales, 421 F.3d 64, 70 (1st Cir. 2005)); see also Chan v. Ashcroft, 93 F. App'x 247, 252-53 (1st Cir. 2004) (rejecting translation-based due-process claim where the petitioner made no objection at the hearing, identified no specific mistranslations, and presented no evidence that alleged mistranslations affected outcome).  Ramirez has not done so.

Ramirez's mistranslation claim finds next to no support in the record.  Ramirez only points to one specific instance of (a potential) mistranslation--the issue of who called the police. But he does not explain how that translation error about a minor detail in his story (assuming that mistranslation did, in fact, occur) could have made a "dispositive difference in the outcome of the proceeding."  Teng, 516 F.3d at 17 (internal citations omitted).  Ramirez and Ahilon generally aver that they believe that their translators did not always understand them, but they point to nothing in the record to indicate that these alleged misunderstandings had any impact on their testimony--in other

- 14 -

words, they do not demonstrate that these difficulties had any impact on the outcome, either.[5]

Without an outcome-influencing mistranslation, our work here is done. In his motion to the BIA for sua sponte relief, and in his brief to us, he contends that the IJ misweighed the evidence and should have credited his testimony and evidence over the police reports. But, as we have already explained to Ramirez himself in appeal number one, that type of fact-based claim is one we cannot review. Ramirez-Matias, 778 F.3d at 326-27.

### III. Explanation Error

The mistranslation claim down, we have one to go: Ramirez says the BIA's explanation of its refusal to exercise its sua sponte authority was so paltry that it violated his due-process rights. Recall, the BIA gave two reasons for denying his motion: it said that Ramirez failed to explain his delay in offering his translation-based due-process argument, and found that Ramirez had not shown that exceptional circumstances warranted reopening his case. But even if we deemed the BIA's explanation lacking in sufficient detail (which we doubt), a petitioner, regardless, cannot state a colorable due-process claim if he does not have a

---

[5] Indeed, the stories presented in Ramirez and Ahilon's post-hearing affidavits--the stories Ramirez claims the IJ should have credited in lieu of the police reports--are the same as the stories the parties presented to the IJ at the hearing.

cognizable property or liberty interest at stake.  <u>Mejia-Orellana</u> v. <u>Gonzales</u>, 502 F.3d 13, 17 (1st Cir. 2007).  Remember, Ramirez appealed only to the BIA's sua sponte authority, and that relief is purely discretionary--meaning it "does not create a cognizable liberty interest."  <u>Id.</u> (citing <u>Jupiter</u> v. <u>Ashcroft</u>, 396 F.3d 487, 492 (1st Cir. 2005)); <u>see</u> <u>Chun Xin Chi</u> v. <u>Holder</u>, 606 F.3d 6, 10 (1st Cir. 2010); <u>Naeem</u> v. <u>Gonzales</u>, 469 F.3d 33, 39 (1st Cir. 2006).  Therefore, even assuming we have jurisdiction to consider constitutional claims where a petitioner sought only sua sponte relief before the BIA, this second jurisdictional issue is fatal to Ramirez's explanation-based claim.  <u>See</u> <u>Ramirez-Matias</u>, 778 F.3d at 326-27.

## CONCLUSION

Ramirez's petition for review is denied.