# United States Court of Appeals
## For the First Circuit

No. 18-1093

AMMA ADU GYAMFI,

Petitioner,

v.

MATTHEW G. WHITAKER,
ACTING ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

Saher Joseph Macarius, Audrey Botros, and Law Offices of Saher Joseph Macarius LLC on brief for petitioner.
Chad A. Readler, Acting Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, and Anna Juarez, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

January 10, 2019

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Matthew G. Whitaker has been substituted for former Attorney General Jefferson B. Sessions, III as the respondent.

**THOMPSON**, **Circuit Judge**.  Petitioner Amma Adu Gyamfi ("Gyamfi") challenges the Board of Immigration Appeals's ("BIA") denial of her motion to reopen and its decision not to exercise its sua sponte authority to reopen her case and grant her request for an adjustment of status.  For the reasons we detail below, we deny and dismiss Gyamfi's petition.

## BACKGROUND

In March of 2004, Gyamfi, a native of Ghana and resident of Italy from 1992 until 2004, arrived in the U.S. on a nonimmigrant B-2 visa that granted her a six-month stay here. Gyamfi didn't leave after her permissible time here expired, and in November 2007, she married a U.S. citizen, Mark Parrish.  That following April, Parrish filed an I-130 petition[1] to get Gyamfi green-card status as the spouse of a U.S. citizen, but when the Department of Homeland Security ("DHS") issued a notice of intent to deny the petition (because the newlyweds hadn't demonstrated the legitimacy of their marriage), Parrish wound up admitting in a 2009 DHS interview that he had made the petition as "a favor" to Gyamfi.  Consequently, he withdrew the petition, and DHS denied Gyamfi's application for adjustment of status in April 2009.

---

[1] An I-130 petition allows a U.S. citizen or lawful permanent resident to sponsor an alien relative's application for permanent resident status.

A month later, DHS initiated removal proceedings against Gyamfi: she was charged with removability as an alien who remained in the U.S. for a time longer than permitted after being admitted as a nonimmigrant visitor (8 U.S.C. § 1227(a)(1)(B)).[2] Over the course of a couple of years (2009-2010) and a few hearings before an immigration judge ("IJ"), Gyamfi would first pursue a new I-130 petition, then withdraw it, and in the end, seek asylum protection.[3]

Unpersuaded by her arguments and testimony relative to her lamentations of persecution, in March 2013, the IJ ordered her removed.[4] The BIA affirmed the IJ and, in July 2014, dismissed the appeal. Gyamfi did not seek judicial review of that decision.

Fast-forward three years to August 31, 2017: in light of an I-130 petition filed in November 2015 on her behalf by her recently naturalized U.S. citizen daughter[5] (and which was approved

---

[2] Gyamfi also was charged as an alien who was inadmissible at the time of entry because she procured, or sought to procure, an immigration benefit by fraud or by willfully misrepresenting a material fact, 8 U.S.C. § 1227(a)(1)(A), but that was later withdrawn.

[3] She testified at a September 2010 hearing that she never applied for asylum in Italy, her home for thirteen years after leaving Ghana in 1992. As for why she never mentioned harboring any fear of returning to Ghana between her 2004 arrival in the U.S. and the September 2010 hearing, she testified she had hoped to adjust status through Parrish.

[4] During the proceedings before the IJ, Gyamfi conceded removability only as an alien who overstayed her visitor's visa.

[5] Gyamfi has six children, five of whom are U.S. citizens and live in the United States. Her eldest child, now 28 years old, is a citizen of Ghana residing there. Her next two eldest, now 25 and

- 3 -

by DHS in April 2016), Gyamfi sought to adjust her status. She moved to reopen her case and also requested sua sponte ("on its own motion") reopening by the BIA premised on the hardship her removal would have on her children. In response, DHS filed an opposition to the motion, albeit late.

The BIA denied Gyamfi's motion as untimely (the final administrative order entered in July of 2014, and the BIA didn't receive the motion to reopen until August 2017) and not falling within any exception to the ninety-day window to file a motion to reopen. See 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. §§ 1003.2(c)(2), 1003(c)(3)(i)-(iv). In addition, the BIA declined to exercise its discretionary authority to reopen the proceedings sua sponte, finding that Gyamfi failed to demonstrate an exceptional situation that would warrant the exercise of its sua sponte power, and she alleged "no current health issues regarding [her I-130-petitioning daughter] or her other United States citizen children that might warrant a finding of exceptional circumstances."

Gyamfi timely petitioned this court for review.

**ANALYSIS**

Gyamfi offers up a smorgasbord of appellate contentions,

---

21 years old, were born in Italy, but are U.S. citizens residing here. And she has three minor U.S. citizen children (ages 17, 12, and 10), all of whom were born in the U.S. and live here now.

- 4 -

but distilling those arguments to their core essence as best we can, we think they primarily fit under two main headings: (1) the BIA abused its discretion by denying her motion to reopen; or, in the alternative, (2) the BIA should have deployed its discretionary authority to reopen the proceedings sua sponte. She advances various arguments in support of these two issues, which we will explore in turn.

And as we review Gyamfi's contestations, we necessarily bear in mind our familiar standard: to the extent we have jurisdiction, "[b]ecause a motion to reopen removal proceedings is a disfavored tool, given the threat it poses to finality, the BIA has a fair amount of latitude to grant or deny the motion and our review is for abuse of discretion only." Mazariegos v. Lynch, 790 F.3d 280, 285 (1st Cir. 2015) (citing Perez v. Holder, 740 F.3d 57, 61 (1st Cir. 2014)); see also Sihotang v. Sessions, 900 F.3d 46, 48 (1st Cir. 2018) ("Motions to reopen -- especially untimely motions to reopen -- are disfavored in immigration cases. Consequently, an alien who seeks to reopen removal proceedings out of time ordinarily faces a steep uphill climb."). Unless a petitioner can show that the BIA either committed a material error of law or exercised its authority arbitrarily, capriciously, or irrationally, we will uphold the BIA's decision. See Bbale v. Lynch, 840 F.3d 63, 66 (1st Cir. 2016) (citing Rosa v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)).

- 5 -

Before diving into Gyamfi's argument, saying a bit more about the pertinent aspects of the ninety-day rule would be helpful.[6]  Pursuant to 8 U.S.C. § 1229a(c)(7)(C)(i), an alien is entitled to file one motion to reopen removal proceedings within ninety days after the final order of removal.  See id. (instructing that, unless an exception applies, "the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal"); see also 8 C.F.R. § 1003.2(c)(2) (stating that, save for specified exceptions, "an alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened"); Neves v. Holder, 613 F.3d 30, 32-33 (1st Cir. 2010)(per curiam).  As for

---

[6] We note here that Gyamfi makes the assertion that a petitioner can file a motion to reopen either within ninety days of the final administrative order or within 180 days due to exceptional circumstances,  citing INA § 240(b)(5)(c)(i), (e)(6)(C) -- this provision has been repealed, and its replacement is codified at 8 U.S.C. § 1229a(b)(5)(C)(i).  There, the reference to 180 days concerns rescission of an order of removal issued because of an alien's failure to appear:  such a removal order can be rescinded if an alien files a motion to reopen "within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances . . . ."  Sec. 1229a(b)(5)(C)(i).  This is not in play in Gyamfi's case, thus the 180-day cut-off is not applicable.

the exceptions, Congress enacted a limited list.  See 8 U.S.C. §

1229a(c)(7)(C)(ii)-(iv); 8 C.F.R. § 1003.2(c)(3).[7]

### 1. Did the BIA abuse its discretion?[8]

#### a.    The Ninety-Day Rule

Gyamfi claims the BIA abused its discretion when it

declined to grant her motion to reopen.  She does not dispute that

her August 2017 filing missed the deadline -- the BIA's final

---

[7] For example, 8 C.F.R. § 1003.2(c)(3) instructs that the ninety-day rule

> [s]hall not apply to a motion to reopen proceedings:
>
> . . .
>
> (ii) To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing;
>
> (iii) Agreed upon by all parties and jointly filed. Notwithstanding such agreement, the parties may contest the issues in a reopened proceeding[.]

[8] As a threshold matter, Gyamfi submits that the BIA stumbled out of the starting gate when it deemed her motion opposed.  Recall that DHS's opposition to Gyamfi's motion to reopen was filed out of time -- Gyamfi submitted a response to that late filing.  But we espy no error of law or abuse of discretion.  As the government correctly points out, considering a late-filed brief is not proscribed, see 8 C.F.R. § 1003.2(g)(3), and regardless, the BIA is duty-bound to use its independent judgment when facing these motions, 8 C.F.R. § 1003.1(d)(1)(ii).  And besides, Gyamfi does not even argue that the BIA improperly based its denial of her motion on the substantive arguments in DHS's papers.  This argument, then, is a nonstarter, so we move on to her primary challenges.

administrative order was issued on July 17, 2014 and October 13, 2014 (ninety days later) was the last day Gyamfi could have filed her motion. However, she asserts that because she was "prima facie" eligible for status adjustment as a result of the previously unavailable evidence (the I-130 visa her daughter filed on her behalf long after the expiration of the ninety-day limit), the BIA should have ruled differently on 8 U.S.C. § 1229a(c)(7)(C)(i)'s ninety-day bar.

The government disagrees, and its position is simple: the ninety-day limit expired and no exception applies. Indeed, the government points out that Gyamfi cannot be "prima facie" eligible for status adjustment given the untimeliness of her motion.

In support of her claim of "prima facie" eligibility Gyamfi cites to Matter of Garcia, 16 I. & N. Dec. 653, 654 (B.I.A. 1978), a case wherein the BIA explained the appropriateness of exercising its discretion (at least at that time) to reopen immigration proceedings during the pendency of adjustment of status applications of prima facie eligible movants. But her reliance on this case is misplaced. Garcia was decided before Congress enacted time and number bars on motions to reopen, Lemus v. Sessions, 900 F.3d 15, 19 (1st Cir. 2018) (citing Dada v. Mukasey, 554 U.S. 1, 13 (2008) (outlining that history)), and what's more, the BIA, itself, has moved away from its Garcia

- 8 -

holding, see id. (collecting BIA cases). Given this evolution (and as we have previously noted), our confidence in Garcia's continuing applicability has been undercut. Id. But whether or not viable, Garcia's recognition of the IJ's discretionary authority is not a rule mandating the exercise of same.

Accordingly, we believe the government has the better argument on the application of the ninety-day rule. Though Gyamfi tells us she can present new evidence, clearly the new evidence she offers, an I-130 visa, is not a statutory exception to the rule. See 8 U.S.C. § 1229a(c)(7)(C); 8 C.F.R. § 1003.2(c)(3)(i)-(iv). And absent an exception operating to prevent the ninety-day rule from applying (Gyamfi doesn't actually argue that one does), motions to reopen are subject to the ninety-day rule and Gyamfi missed it. We see no abuse of discretion.

### b. Equitable Tolling

Alternatively, Gyamfi argues the BIA erred in not reopening her removal proceedings because she established "unusual facts and exceptional circumstances" meriting the equitable tolling of the ninety-day deadline for filing such motions. Gyamfi submits that she's made the equitable tolling showing by, first, demonstrating that she couldn't have known about her new I-130 beneficiary status within ninety days of her original proceedings and as such, her ignorance of what the future actually would bring constitutes an extraordinary circumstance. As she

- 9 -

puts it, "applying this statutory deadline does not serve the interests of justice in this case."  Second, she puts into the "extraordinary circumstances" basket the BIA's alleged error in neglecting to consider any factors besides the health of her children.[9]  In particular, she emphasizes the hardship her removal will have on her kids:  if they return to Ghana with Gyamfi, they will not enjoy a U.S. education, and Ghanaian high crime and mortality rates, for example, would negatively affect them; and if they stay in the U.S. without her, this also would negatively impact them.  The government responds that even if equitable tolling was a viable avenue to relief in the immigration context, the BIA did not abuse its discretion in finding that Gyamfi has not made the requisite showing to support its use.  Once again, we agree with the government.

Equitable tolling "extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own."  Neves, 613 F.3d at 36 (citing Fustaguio Do Nascimento v. Mukasey, 549 F.3d 12, 18-19 (1st Cir. 2008)).  So the party seeking to toll the deadline bears the burden of showing: "(1) that he has

---

[9] Gyamfi also points to the "five factors" laid out in Matter of J-J-, 21 I. & N. Dec. 976 (B.I.A. 1997), saying the BIA's failure to consider these factors constitutes legal error.  To the extent she means to argue that case to support her equitable tolling argument, we fail to see its relevance -- Matter of J-J- does not touch on equitable tolling.

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). We are mindful, though, that equitable tolling "is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Id. (quoting Wallace v. Kato, 549 U.S. 384, 396 (2007)). Furthermore, the decision to apply equitable tolling is a judgment call, see Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005) (applying the abuse of discretion standard to the district court's decision regarding equitable tolling), so the BIA's decision "will stand unless [its] resolution rests on a material error of law or a manifestly arbitrary exercise of judgment," Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015) (citing Fustaguio Do Nascimento, 549 F.3d at 18-19).

This court has not decided whether equitable tolling may apply in this context.[10] See, e.g., Neves, 613 F.3d at 36; Chedid v. Holder, 573 F.3d 33, 37 (1st Cir. 2009); see also Mata v. Lynch, 135 S. Ct. 2150, 2156 n.3 (2015) (noting that the Court had "no opinion as to whether or when the INA allows the Board to equitably toll the 90-day period to file a motion to reopen"). We take our

_____

[10] Gyamfi tells us that we have previously "indicated that [we] would follow the Ninth and Second Circuits[']" lead and apply equitable tolling in this context, citing our opinion in Jobe v. INS, 238 F.3d 96 (1st Cir. 2001) (en banc). Simply put, this is not true, and we need not say more than that.

- 11 -

cue from decisions past and assume, without deciding, that the ninety-day rule is subject to equitable tolling. See Neves, 613 F.3d at 36 (citing Chedid, 573 F.3d at 37).

Even giving Gyamfi the benefit of that assumption, she cannot prevail. First, Gyamfi failed to meet the extraordinary circumstances prong. She points us to no authority to support her supposition that the existence of new evidence (the I-130) is an extraordinary circumstance. Indeed, an unforeseeable future occurrence cannot logically be viewed as an influence on past conduct. Same goes for her contention about the detrimental impact of her removal on her children. The horrors she portrays as befalling her children should she be required to depart the country are little different today as during the ninety-day window. Therefore, neither of Gyamfi's reasons for not timely filing can be characterized as an extraordinary circumstance that "stood in her way" when it came to meeting the statutory deadline. Jobe, 238 F.3d at 100 ("The fundamental principle is that equitable tolling 'is appropriate only when the circumstances that cause a [party] to miss a filing deadline are out of [her] hands.'" (alteration in original) (quoting Salois v. Dime Sav. Bank, 128 F.3d 20, 25 (1st Cir. 1997))).

In any event, even if we were to assume Gyamfi has demonstrated an extraordinary circumstance, she nonetheless fails to show how she diligently pursued her rights during the ninety-

day window or the sixteen months that followed the I-130's approval. Indeed, even overlooking the ninety-day period (during which she had no reason to seek to reopen as the I-130 was not yet in play, though she could have brought up the hardship-to-the-children argument), she still has a sixteen-month due diligence issue for which she has no convincing explanation. Gyamfi's argument is that she did her due diligence by getting a lawyer (the same one she'd had throughout, we note) and by submitting her motion to reopen once the I-130 was approved. But neither action accounts for the sixteen-month delay following the I-130's approval. See, e.g., Dawoud v. Holder, 561 F.3d 31, 36 (1st Cir. 2009) (assuming equitable tolling was available but concluding nevertheless that a motion to reopen filed out of time (two years post-final decision and eleven months post-I-130 approval) did not warrant equitable tolling); Chedid, 573 F.3d at 37 (holding that when petitioner failed to "provide[] [any] information whatsoever regarding the actions he took during the one-year period immediately following" the original order, he failed to demonstrate due diligence).

In sum, Gyamfi fails to demonstrate how the BIA abused its discretion in any way, and having failed to do so, she is bound by the ninety-day rule, which expired long before she filed her motion to reopen.

**2. Do we lack jurisdiction to review the BIA's decision not to exercise its sua sponte authority to reopen the proceedings in this case?**

Absent an abuse of discretion by the BIA in its decision to deny Gyamfi's motion to reopen, we know that a motion to reopen can be granted only if the BIA exercises its sua sponte authority to reopen the proceedings -- something the BIA was asked to do here but did not. Gyamfi contends this was error, specifically, constitutional due process error. Peppering this section of her briefing with conclusory arguments that appear to be offered in support of her constitutional claim, her primary bone of contention seems to be that the BIA impermissibly ignored factors she says should have been considered as delineated in Matter of J-J-, 21 I. & N. Dec. 976[11] (she lists the following factors: hardship to a petitioner and her family; a petitioner's criminal history; the severity and number of immigration violations; the petitioner's cooperation with law enforcement; and whether removal would comport with the government's policy objectives), thus depriving her of due process. The government responds by challenging our jurisdiction to entertain Gyamfi's protestations. Therefore, let's first discuss the converging dynamic of the BIA's sua sponte authority to reopen and our jurisdiction over its use of that authority -- to the extent it exists.

---

[11] This is the same case Gyamfi mysteriously cited in support of her equitable tolling claim.

In past cases, "we have repeatedly held that we do not have jurisdiction to review challenges to the BIA's failure to exercise its sua sponte authority because such decisions are 'committed to its unfettered discretion.'" Matias v. Sessions, 871 F.3d 65, 68 (1st Cir. 2017) (quoting Luis v. INS, 196 F.3d 36, 40 (1st Cir. 1999)); see also Reyes v. Sessions, 886 F.3d 184, 188 (1st Cir. 2018) (quoting Charuc v. Holder, 737 F.3d 113, 115 (1st Cir. 2013)). As rationale for so holding, we explained, "no judicially manageable standards are available for judging how and when [the BIA] should exercise its discretion," making it "impossible to evaluate [the] agency action for 'abuse of discretion'"; so "the very nature of the claim renders it not subject to judicial review." Luis, 196 F.3d at 40 (citations omitted); see also Neves, 613 F.3d at 35.

In an effort to convince us that we do in fact have jurisdiction, Gyamfi directs us to 8 U.S.C. § 1252(a)(2)(D), which reads in pertinent part: "Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). But this court has yet to rule on whether § 1252(a)(2)(D) gives us jurisdiction to review (under certain

- 15 -

circumstances) the BIA's decision not to reopen sua sponte.  See Lemus, 900 F.3d at 19 (citing Reyes, 886 F.3d at 188).

Last year, in Matias, we carefully surveyed the landscape against which this argument plays out, noting that "[o]ur no-jurisdiction rule originated with Luis, 196 F.3d at 40," but recognizing that Luis "was decided years before the 2005 passage of § 1252(a)(2)(D), so the fact that we announced such a blanket rule then does not decide whether § 1252(a)(2)(D) gives us jurisdiction today."  Matias, 871 F.3d at 68.  And we also observed that "we have previously identified § 1252(a)(2)(D) as a potential jurisdiction-restorer over constitutional claims brought in motions for sua sponte relief."  Id. at 68-69 (citing Guerrero v. Holder, 766 F.3d 122, 126 n.12 (1st Cir. 2014)).  However, "whether § 1252(a)(2)(D) has any effect on Luis's no-jurisdiction rule," as noted, remains an open question.  Id. at 69.

Some of our sister circuits have tackled § 1252(a)(2)(D) in this context.  For example, the Seventh Circuit concluded that § 1252(a)(2)(D) gives it jurisdiction to consider legal and constitutional claims presented in appeals to the BIA's sua sponte authority.  Cevilla v. Gonzales, 446 F.3d 658, 660 (7th Cir. 2006) (reasoning that "the general 'no law to apply' principle of judicial review of administrative action has been superseded in the immigration context by 8 U.S.C. § 1252(a)(2)[(D)]").  So in the Seventh Circuit, appellate jurisdiction "extends to the

- 16 -

Board's refusal to reopen . . . removal proceedings sua sponte" when a constitutional claim or legal question is raised relevant to an underlying order of removal in the immigration context. Zambrano-Reyes v. Holder, 725 F.3d 744, 751 (7th Cir. 2013).[12] Other circuits, however, have a different take: in the Sixth Circuit, for instance, § 1252(a)(2)(D) was found not to confer jurisdiction in the constitutional-claim context. See, e.g., Rais v. Holder, 768 F.3d 453, 464 (6th Cir. 2014) (explaining that § 1252(a)(2)(D) "has no bearing on the question of whether courts may review the BIA's exercise of its sua sponte authority, for which no chapter of any legislation provides"); see also Zakar v. Sessions, 739 Fed. Appx. 774, 778 (6th Cir. 2018); Gor v. Holder, 607 F.3d 180, 188 (6th Cir. 2010).

So, all told, some jurisdictions have found § 1252(a)(2)(D) to be a game-changer; others have not. But when faced with the same argument in both Lemus, 900 F.3d at 19, and Reyes, 886 F.3d at 188, we declined to decide this issue, and we

---

[12] Some other circuits agree. See, e.g., Bonilla v. Lynch, 840 F.3d 575, 588 (9th Cir. 2016) (deciding that the court "has jurisdiction to review [BIA] decisions denying sua sponte reopening for the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error"); Nawaz v. Holder, 314 Fed. Appx. 736, 737 (5th Cir. 2009) (per curiam) (concluding that the court did not have jurisdiction to review sua sponte denial unless "constitutional challenges . . . were raised before the BIA"); Tamenut v. Mukasey, 521 F.3d 1000, 1005 (8th Cir. 2008) (per curiam) (same).

- 17 -

do so again today. That is because § 1252(a)(2)(D) "only arguably applies to a petitioner's constitutional or legal challenges if they are colorable," Lemus, 900 F.3d at 19 (citing Ayeni v. Holder, 617 F.3d 67, 71 (1st Cir. 2010)), and here, even if § 1252(a)(2)(D) serves as a basis for jurisdiction, Gyamfi has not set forth any colorable claims. We explain.

As we said in Lemus, a due process claim can succeed only if there is a "cognizable liberty interest." 900 F.3d at 19 (quoting Matias, 871 F.3d at 72). We have further pointed out that the BIA's decision whether to exercise its "purely discretionary" sua sponte authority "does not create a cognizable liberty interest." Matias, 871 F.3d at 72 (quoting Mejia-Orellana v. Gonzales, 502 F.3d 13, 17 (1st Cir. 2007)). And aside from faulting the BIA for not exercising its discretionary authority to reopen her removal proceedings, Gyamfi has not identified any other cognizable liberty interest. In fact, Gyamfi drops the phrase "due process" one single time in her brief, and her points purportedly in support of her due-process claim (relating to the hardship to be suffered by her children) do not support the outcome she seeks and are not buttressed by controlling authority. We have said -- and now repeat -- that "'[a] bare allegation of either a constitutional shortfall or legal error' will not suffice," Rivera v. Sessions, 903 F.3d 147, 150 (1st Cir. 2018) (quoting Ayeni v. Holder, 617 F.3d 67, 71 (1st Cir. 2010)),

- 18 -

and "mere 'invocation of the Due Process Clause does not create a constitutional claim for the purpose of 8 U.S.C. § 1252(a)(2)(D),'" id. (quoting Cruz-Orellana v. Sessions, 878 F.3d 1, 5 (1st Cir. 2017)).

Meanwhile, Gyamfi's reliance on Matter of J-J-, 21 I. & N. Dec. 976, is misplaced and unpersuasive (and downright odd): the factors Gyamfi complains were ignored by the BIA (hardship to a petitioner and his/her family, a petitioner's criminal history, the severity and number of immigration missteps) nowhere appear in Matter of J-J-, and we are unable to find any authority (and Gyamfi points to no other) that establishes that the BIA's failure to mention these factors constitutes a violation of due process.[13]

In sum, Gyamfi cannot prevail -- even if § 1252(a)(2)(D) were to provide an arguable basis for jurisdiction over

---

[13]   We are baffled by Gyamfi's reading of Matter of J-J-. That case makes no mention of a due process limitation to the BIA's discretion to reopen removal proceedings, much less articulates a five-factor test for the supposed limitation. Rather, it is evident from our own research that the factors Gyamfi recites are borrowed from a 2001 INS directive. See Memorandum regarding Motions to Reopen for Consideration of Adjustment of Status from Bo Cooper, General Counsel for Immigration and Naturalization Service, to Regional Counsel (May 17, 2001), https://www.aila.org/infonet/ins-standards-to-join-a-motion-to-reopen. Far from governing the BIA's discretion to reopen a case sua sponte, the factors listed in this memorandum guide DHS's discretion in deciding whether to join a petitioner in her motion to reopen. Id. This is not a matter of concern for the court, and that Gyamfi would lure us into this investigative rabbit hole at all is troublesome.

constitutional claims, Gyamfi has no colorable constitutional or legal claim on which we might base jurisdiction.

## CONCLUSION

Gyamfi's petition for review is denied as to her challenge to the BIA's determination that the motion to reopen was untimely, and it is dismissed for lack of jurisdiction as to her challenge to the BIA's decision to not exercise its authority to reopen sua sponte.